Daniel Sullivan and Robert Flowers, Appellants *v.* Board of Supervisors of Lower Makefield Township, Appellee.

Argued October 7, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Donald B. McCoy*, with him *Dean & McCoy*, for appellants.

*William J. Carlin*, with him *Begley, Carlin, Mandio, Kelton & Popkin*, for appellee.

OPINION BY JUDGE KRAMER, December 11, 1975:

This is an appeal by Daniel Sullivan and Robert Flowers from an order of the Court of Common Pleas of Bucks County, dated January 9, 1975. The order dismissed their appeal from the denial by the Supervisors of Lower Makefield Township of a substantive challenge to the Township's zoning ordinance. The only real issue raised by appellants is whether the ordinance in question provides only a "token" amount of land for commercial development and thus has an impermissible exclusionary effect. We conclude that the ordinance is a proper exercise of the police power and affirm the lower court.

Appellants own 45.21 acres on which they propose to build and operate an extensive nursery and garden supply

business. The land is zoned R-1, "Residential-Low Density," and, apparently,[1] no commercial activity is permitted in R-1 districts.

The Township consists of 17.62 square miles (over 11,200 acres), of which 47 acres are zoned C-1, "Commercial-Neighborhood Shopping." These 47 acres are contained in one centrally located commercial district, and a minimum lot size of ten acres is required for commercial development.

In addition to the single C-1 district, the Township has two C-2 "Commercial-Highway Services" districts, covering an additional 68 acres, with a minimum lot size of two acres required for commercial development.[2] The total area of the Township's commercial zones is thus 115 acres, or about one percent of the total area of the municipality.

The single C-1 district is located at the intersection of several of the Township's principal roadways, near the geographic center of the municipality. The testimony of the Township's only witness, a planning expert, confirms the obvious conclusion that the Township wants commercial development to occur in an integrated fashion in one centrally-located area. The C-2 districts are designed to accommodate commercial interests which cater to transients, who are traveling through the Township along arterial highways.

Our scope of review when the lower court has not taken additional evidence is to determine whether the Board of Supervisors committed an error of law or an abuse of discretion. *Township of Upper Moreland v. Gaunt*, 16 Pa. Commonwealth Ct. 334, 328 A.2d 556 (1975).

---

1. The entire zoning ordinance was not made part of the record.

2. We are accepting these factual assertions made by appellants for the purposes of discussion. The record is devoid of data concerning the C-2 districts, other than what can be gleaned from the zoning map.

Before discussing the only issue, there is one preliminary matter which merits comment. Throughout their brief, appellants raise questions concerning the *wisdom* of this municipality's overall zoning plan. Indeed, it is difficult to discern, from reading the testimony alone, that there was any legal challenge to the constitutionality of the ordinance. The curative amendment submitted by appellants along with their substantive challenge under Sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code[3] was, of course, properly before the Board of Supervisors. Once that amendment was denied, however, the sole issue remaining involved the legal merit of appellants' allegation of exclusionary zoning. No litigant is entitled to legislative action under the MPC, as we have recently held. *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975).

Turning to appellants' main contention, we are urged to place the burden of proving the validity of the ordinance upon the municipality, in accordance with *Beaver Gasoline Company v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971). We decline to do so. *Beaver* involved a *total* ban on a particular type of land use and is thus distinguishable from the instant case, where there has been provision made for at least some commercial development in three different portions of the municipality. The presumption of validity which attaches to zoning ordinances is so well-established that courts have disturbed it only in the most exceptional circumstances, and for only the most compelling reasons. *See Beaver, supra; National Land and Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965), and *DeCaro v. Washington Township,* 21 Pa. Commonwealth Ct. 252, 344 A.2d 725 (1975). Al-

---

3. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S.§§10609.1, 11004.

though Lower Makefield Township has not been generous in its allocation of land for commercial development, we are not convinced that the instant case can be characterized as one of total prohibition.

To carry its burden of proving the invalidity of the ordinance, appellants rely principally upon Judge MEN-CER'S opinion in support of affirmance in *Willistown Township v. Chesterdale Farms, Inc.*, 7 Pa. Common-wealth Ct. 453, 300 A.2d 107 (1973), which was recently affirmed by the Supreme Court.         Pa.     , 341 A.2d 466 (1975). Appellants assert that their proof shows that, despite the provisions for C-1 and C-2 districts, the Township is guilty of a *de facto* exclusion of all commercial development and, consequently, has not allowed for its "fair share" of necessary development under *Willistown*. Specifically, appellants emphasize (1) the fact that the land presently zoned C-1 is owned by many individuals in parcels of less than the ten acres required for development; and (2) the fact that, even considering the area encompassed by all three of the commercial districts, only a relatively small percentage of the Township's area is set aside for commercial use.

We see nothing in this record which indicates that it would be unreasonable to expect a determined developer to be able to successfully assemble at least a ten-acre parcel in the C-1 district. Appellants argue that because 19 of the 47 acres zoned C-1 are occupied by a private school, a church, a firehouse, a meeting hall and six farmhouses, development in conformity with the ten-acre requirement is "not reasonably available by any standard for commercial development." Reserving the question of whether the total area zoned for commercial development is too small, we see no merit in appellants' point other than a recognition that a potential developer will have to negotiate with at least two existing owners to assemble a usable tract in the C-1 zone. The statistics presented by appellants do not warrant a conclusion that even most

of the C-1 land cannot be acquired through a reasonable amount of effort by a determined developer. Except for the most remote portions of our state, there is probably very little land which is not useful to someone for some purpose, and it is not the obligation of municipalities to assure that land within a given district is readily available for sale. *Groff Appeal,* 1 Pa. Commonwealth Ct. 439, 274 A.2d 574 (1971). Some recognition of existing land uses should be made when zoning maps are prepared, but the record in this case does not support a conclusion that the C-1 district, as small as it is, is an illusion.

We thus reach the crux of appellants' argument, that the 115 acres zoned for commercial use represents tokenism and a refusal by the Township to accept its "fair share" of commercial development. As Judge MENCER said in *Willistown, supra,* " '[f]air share' is much like the word 'reasonable'—difficult of definition but still capable of indicating what is expected within bounds which only individual cases can define." 7 Pa. Commonwealth Ct. at 469, 300 A.2d at 116.

In recent years many cases have dealt with the obligations of municipalities to accommodate the growth needs of society as a whole, and there is no longer any doubt that a rural municipality, such as Lower Makefield, cannot, through its zoning ordinance, unreasonably exclude people or restrict needed development. *Willistown, supra; Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970) ; *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970) ; *National Land, supra.* We see a distinction, however, between the cases cited above, which all involved the housing needs of society, and the commercial development sought in the instant case. We recognize that commercial development and housing development bear a definite relationship to one another, but, in determining the "fair share" of growth on a case-by-case basis, we must consider that a municipality may have valid reasons for regulating commercial growth which might not suffice

if those same reasons were advanced in support of a single-family dwelling restriction or a residential minimum lot size.

To sustain their burden of proving that the Township's ordinance does not provide for its "fair share" of commercial development, appellants have not offered any relevant proof beyond the area and ownership statistics described above. There is no evidence indicating projected population growth, and even the present population of the Township is not mentioned in the record. There is no evidence which attempts to draw a connection between population and the need for commercial services and, in fact, there is no evidence indicating what commercial uses *presently* exist in or near the Township. The only facts we have which are relevant to the "fair share" determination are the area and ownership statistics, and, while they alone might be sufficient in light of the case law dealing with housing needs, it would be unwise to mechanically apply the holdings in those cases to an instance of commercial development when the factors to be considered in determining the commercial needs of the area may be considerably different.

No one can seriously contend that a community must allocate an equal amount of land to both residential and commercial development in order to accept its "fair share" of growth. This being so, it is not sufficient, absent a showing of total prohibition, for a developer to merely point out that a relatively small area of a municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served.

We affirm the order of the lower court.