Nathan S. Nassif et al. *v.* Board of Adjustment of the City of Pittsburgh.

City of Pittsburgh, Appellant.

Argued October 9, 1981, before Judges WILLIAMS, JR., MACPHAIL and PALLADINO, sitting as a panel of three.

*D. R. Pellegrini*, Deputy City Solicitor, with him, *Mead J. Mulvihill, Jr.*, City Solicitor, for appellant.

*Frank J. Lucchino, Grogan, Graffam, McGinley, Solomon & Lucchino*, for appellee.

OPINION BY JUDGE WILLIAMS, JR., January 7, 1982:

The City of Pittsburgh has appealed from an order of the Court of Common Pleas of Allegheny County directing the Pittsburgh Board of Adjustment to issue an occupancy permit to Kountz & Rider, Inc. (K&R) and the other appellees herein. The permit related to a 14 space parking lot in which K & R had obtained, by lease, parking rights to be used in conjunction with K & R's nearby clothing store.

The parking lot in question is the rear part of a parcel of land owned by Nathan and Joseph Nassif (Nassifs), the other appellees in this case. Also on that same parcel is a 14 unit apartment building, which is abutted by the parking lot. The Nassifs acquired the property, apartment building and adjoining parking lot, in 1975. That same year, the Nassifs obtained an up-dated occupancy permit, which stated that the

property was to be used for 14 apartment units and 14 parking spaces.

Under the operative zoning regulations, the City of Pittsburgh Zoning Ordinance of 1958, there had to be a parking space for each unit in the Nassif apartment building. Also, under the same Ordinance, the parcel of land containing the apartment building and the parking lot is in a district zoned "R-4 Residential"; and, in such a district, an off-street commercial parking lot is not a permitted use of property.

Immediately across an alley from the Nassif parking lot, but in a different zoning district, is the business establishment of K & R. Desiring to use the parking lot for its customers and employees during business hours, K & R, in November 1974, entered into a lease agreement with the Nassifs' predecessor in title to use the parking lot for that very purpose.

It appears from the record that K & R used the parking lot for its commercial purposes from late 1974 until 1977. As a result, the parking lot was subject to a mixed use during that period: it was used for parking by the residents of the apartment building; and by the customers and employees of K & R.

In February 1977, the City Zoning Administrator sent a letter to the Nassifs directing them to discontinue the commercial use of their parking lot by K & R. The Code Administrator took the position that such use was contrary to the occupancy permit held by the property owners.

In September 1977, the Nassifs and K & R joined in an application for an occupancy permit to allow the use of the parking lot in conjunction with the K & R business. When that application was denied, the applicants appealed to the Board of Adjustment, asserting that commercial use of the parking lot was legal as the continuation of a prior nonconforming use of the Nassif property. After a hearing the Board of Adjust-

ment denied the appeal; thereupon, the applicants appealed further to the Court of Common Pleas of Allegheny County.

The court below entertained the matter *de novo,* but in so doing appointed a referee to take evidence and submit proposed findings of fact and conclusions of law. The referee conducted a hearing; and, based on the evidence received, concluded that the Nassifs and K & R had proved a prior nonconforming use of the property as a commercial parking lot. More specifically the referee found that the use of the property for commercial parking predated the City's original zoning ordinance, enacted in 1923; and found that such use was continuous thereafter, at least until the time K & R leased the use of the parking lot.

The lower court adopted the referee's adjudication, and entered an order directing the issuance of an occupancy permit to allow the commercial use of the parking lot on the Nassif property, based on a determination of prior nonconforming use. That order induced the instant appeal to this Court.

The central element in this case is the City of Pittsburgh's original zoning ordinance, which, as we have indicated, became law in 1923. Under that ordinance the land here in issue, now owned by the Nassifs, was zoned "A-Residential"; and was not legally available for commercial use. The property remained so zoned until 1958 when it was reclassified as "R-4 Residential," which continued the prohibition against commercial use. To prevail on their claim, the applicants in this case had the burden of proving that the use they seek is one that preceded the proscription of zoning regulation. The burden of proving the existence or extent of a nonconforming use rests on the property owner who would claim the benefits of the rights accorded property with that status. *Overstreet v. Zoning Hearing Board of Schuylkill Township,* 49 Pa. Com-

monwealth Ct. 397, 412 A.2d 169 (1980); *Little v. Abington Township Zoning Hearing Board*, 24 Pa. Commonwealth Ct. 490, 357 A.2d 266 (1976). For purpose of the case at bar, the applicants, the Nassifs and K & R, had to prove that the Nassif property was used for commercial parking prior to the 1923 ordinance, and to such a degree as to constitute a prior nonconforming use.

At the referee's hearing, the applicants presented one witness to establish the use of the Nassif property prior to 1923. This witness, a Mr. Charles Stone, Jr., was born in 1904. About 1920 he moved with his family to the address now occupied by K & R. In the front of the property, which was owned by Mr. Stone's father, was the family residence. At the rear of the property, across the alley from the land now owned by the Nassifs, were facilities in which Mr. Stone's father conducted a business from about 1920 to about 1938.

Mr. Stone testified that during the early 1920's there was, on the rear part of the Nassif property, a two-story frame structure which housed living quarters on the upper level and three garage units below. According to Mr. Stone these garage units were used for parking, but only by two people that he could recall: a milk-truck driver who rented living quarters on the second story, and the owner of a nearby plumbing business. Mr. Stone further testified that the entire two-story structure was torn down in 1922 or 1923, or even possibly 1924; he could not be certain which year it was.

Concerning the use of the garages before they were razed, Mr. Stone stated that the milk-truck driver worked for a dairy company, and would drive a company truck home every day and leave it parked there overnight. As for the plumbing business, one of its trucks would be "occasionally" parked in one of the garage units.

Mr. Stone added that after the building was torn down the Nassif property remained a vacant lot for many years, during which time employees and customers of his father's business used the vacant lot for parking, as did others.

The rest of the applicants' evidence, also principally from Mr. Stone, was devoted to showing that from the time the old two-story building on the Nassif property was torn down some time in the 1920's, until the time K & R leased parking rights in 1974, the property had been used by businesses for the parking of vehicles.

Where additional evidence is taken, and the lower court decides the matter *de novo,* our review is limited to a determination of whether the court committed an error of law or an abuse of discretion. *E.g., Seltzer v. Zoning Board of Adjustment of the City of Pittsburgh,* 39 Pa. Commonwealth Ct. 520, 395 A.2d 1041 (1979). In our view, the applicants' evidence adduced before the referee was not sufficient to establish a prior non-conforming use.

The initial problem with Mr. Stone's testimony is that it was highly equivocal as to when the old structure on the property in question was torn down. According to his testimony, it could have been torn down in 1922 or 1923 or 1924. The significance of this equivocation is that a fact-finder would have to guess which year it was. The testimony of this witness does not afford a substantial basis for concluding that the use of the garages, and subsequently the vacant lot, actually occurred before the enactment of the 1923 zoning ordinance.

Even if the truck driver's use of the garages occurred prior to the 1923 ordinance, that use was not commercial. The truck driver resided on the property, and his use of the property for parking the truck he drove was incident to his residency. His right to park

the truck there did not arise from any shown relationship between his landlord and employer, but solely from the fact that he lived there. In short, the truck driver's use of the premises for parking was not a nonconforming use, at all. *See Yocom's Appeal,* 142 Pa. Superior Ct. 165, 15 A.2d 687 (1940). And, even if the plumber's use of one of the garages preceded the ordinance, Mr. Stone described that use as being "occasional." An occasional activity does not rise to the level of a prior nonconforming use.[1]

For the reasons set forth above, we reverse the order of the lower court.

ORDER

And Now, the 7th day of January, 1982, the order of the Court of Common Pleas at SA 15 of 1978, the above matter, is hereby reversed.

Judge MACPHAIL concurs in the result only.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.

---

[1] *See Ashline v. Bristol Township Zoning Board of Adjustment,* 408 Pa. 245, 182 A.2d 531 (1962).