560 A.2d 253

**CAMBRIDGE LAND COMPANY and Herbert Brothers, Appellants,**

**v.**

**The TOWNSHIP OF MARSHALL, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1989.

Decided June 9, 1989.

438

Gene E. Arnold, Thomas C. Herbertson, Willman & Arnold, Pittsburgh, for appellants.

Arthur J. Leonard, Robb, Leonard & Mulvihill, Pittsburgh, for appellee.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, COLINS, McGINLEY, and SMITH, JJ., dissenting.

CRAIG, Judge.

This is an appeal by landowners Cambridge Land Company and Herbert Brothers from a decision of the Court of Common Pleas of Allegheny County, in which the court affirmed the Marshall Township Board of Supervisors' rejection of the landowners' curative amendment proceeding, which charged that the present zoning ordinance is invalid because it is exclusionary.

From the board's findings, we take the following facts. The landowners together own a 40–acre tract of land located at Route 910 and Wexford Run Road in Marshall Township. Cambridge Land Company owns 13 acres of the land, and Herbert Brothers own 27 acres of the land. They desire to construct garden apartments and neighborhood commercial structures on the land. However, the property is currently zoned as single-family residential property.

On November 28, 1986, the landowners filed separate challenges to the validity of the zoning ordinance. Herbert Brothers included a proposed curative amendment and a certification. Sections 609.1 and 1004(2) of the Pennsylva-

nia Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10609.1, 11004(2).[1] Cambridge Land Company did not include either a curative amendment or the required certification.

On January 21, 1987, and May 4, 1987, the Marshall Township Board of Supervisors held hearings.

■  This court's scope of review here is limited to determining whether the board committed an error of law or an abuse of discretion in rejecting the landowners' challenges because the court of common pleas has not taken any additional evidence beyond that presented to the board. *Sullivan v. Board of Supervisors of Lower Makefield Township,* 22 Pa. Commonwealth Ct. 318, 348 A.2d 464 (1975).

The first issue is whether the Cambridge Land Company's challenge to the zoning ordinance is fatally flawed because it failed to include a curative amendment and the certification statement required by section 1004(2)(a) and (d) of the MPC, 53 P.S. § 11004(2)(a) and (d).

The second issue is whether Herbert Brothers' challenge was valid in light of the fact that, although it included the certification statement required by section 1004(2)(a), Herbert Brothers had actual knowledge that the board was considering revision of the neighborhood commercial zoning.

The third and fourth issues involve whether the township has provided for its fair share of both multi-family dwellings and neighborhood commercial uses.

1.

■  In reference to the first issue, the board contends that the challenge to the existing zoning ordinance raised by Cambridge Land Company was not valid because the

1. Although the Act of December 21, 1988, P.L. 1329, No. 170, has further amended the MPC and altered the section numbers, the pre–1988 version of the MPC governs this case and is cited accordingly.

company failed to comply with section 1004 of the MPC, 53 P.S. § 11004, which requires:

    1. A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge....

    ....

    (b) To the governing body together with a request for a curative amendment under section 609.1.

    2. The submissions referred to in subsection (1) shall be governed by the following:

    (a) The landowner shall make a written request to the board or governing body that it hold a hearing on his challenge. The request shall contain a short statement reasonably informing the board or the governing body of the matters that are in issue and the grounds for challenge. Such statement shall contain *a certification that the landowner did not know at the time of the application (i) that the municipality had resolved to consider a particular scheme of rezoning by publication of notice* of hearings on a proposed comprehensive plan or proposed zoning ordinance or otherwise, or (ii) that the scheme of rezoning would be inconsistent with the landowner's proposed use; provided that this rezoning scheme had reached sufficient particularity to disclose that, if adopted, it would cure the defect in the zoning ordinance attacked by the substantive challenge.

    ....

    (d) If the submission is made to the governing body under subsection (1)(b), *the request shall be accompanied by an amendment or amendments to the ordinance proposed by the landowner to cure the alleged defects therein.* (Emphasis added.)

The board contends that Cambridge Land Company did not submit either a certification or a curative amendment with its challenge, and therefore, it failed to meet the procedural requirements of § 1004(2)(a) and (d).

Cambridge Land Company argues that the absence of these statements was not a fatal flaw. The challenges by both companies were consolidated by the board for the purpose of the hearing, and the curative amendment and certification filed by Herbert Brothers was identical to the statements left out by Cambridge Land Company, allegedly due to a clerical error. Therefore, Cambridge contends, the board had notice of the landowner's proposals to cure the alleged defects and a statement certifying that they had no knowledge that this municipality had resolved to consider the zoning issues in question; hence, the requirements of § 1004 were met. Furthermore, the landowners contend that the board proceeded to hear the challenge and render a decision, and thus, by those actions, conceded that the error was not fatal to the challenge.

This court, in *Zagar Appeal*, 74 Pa. Commonwealth Ct. 270, 459 A.2d 1327 (1983), examined the legislature's intent. The court stated, " '[o]ne of the principal purposes of making Section 1004 of the MPC the exclusive means by which a substantive challenge may be allowed, is to insure that a municipality had sufficient notice that such a challenge was being made.' " *Zagar*, 74 Pa. Commonwealth Ct. at 275, 459 A.2d at 1329, (citing *Hammermill Paper Co. v. Greene Township*, 39 Pa. Commonwealth Ct. 212, 218, 395 A.2d 618, 620 (1978)).

In this action, both landowners submitted their requests at the same time, drafted by the same attorney, in regard to the 40 acres of land. The board was informed that the challenge was being presented by both landowners. Herbert Brothers submitted a curative amendment, and there was no evidence that Cambridge Land Company had plans that in any way disagreed with the proposal submitted by Herbert Brothers. Furthermore, during the two hearings conducted by the board, both parties were represented by the same attorney and relied on the same expert testimony in presenting their case. In essence, the entire challenge was a joint one.

The board consolidated the two cases and held hearings on the same issues without claiming that either petition was invalid. Had there been questions about the procedural requirements regarding the filing of curative amendments or certifications, the board should have addressed them before it proceeded to decide the case on the merits. The court of common pleas chose not to address this issue because the board had reached a decision on the merits.

Thus, we conclude that the board's assertion that the Cambridge challenge was fatally flawed is without merit.

2.

■ The second issue is whether Herbert Brothers' certification was invalid because that landowner had actual knowledge that the board was considering rezoning the then existing neighborhood commercial district.

Testimony presented at the May 4 hearing indicates that, on June 16, 1986, a petition signed by residents of Marshall Township was presented to the board of supervisors for the purpose of eliminating the existing neighborhood commercial zoning district. The board of supervisors established an ad hoc committee charged with researching and presenting alternative solutions to the neighborhood commercial district.

The board contended that both James and Claude Herbert were aware that such steps had been taken and that Claude Herbert asked to be a member of the advisory committee. (R99a). Claude Herbert was retained by the committee in the capacity of a consultant. James Herbert attended the October 9 meeting of the committee and began to work actively with the committee (R104c).

The board contends that both Claude and James thus had actual knowledge that the township was considering alternatives to the neighborhood commercial zoning district, and therefore, the certification submitted was inconsistent with the knowledge attributed to them.

Herbert Brothers contend that the certification submitted was not invalid under § 1004(2)(a) because the language in

that subsection requires that the municipality must have published a notice of hearing on the proposed comprehensive plan. The Herbert brothers cite *Marinari v. Zoning Hearing Board of New Hanover*, 90 Pa. Commonwealth Ct. 601, 496 A.2d 121 (1985), to support their contention. In that opinion, the court stated that, "[c]ase law clearly requires *public advertisement* of an intent to consider a *particular scheme* of rezoning." *Id.*, 90 Pa.Commonwealth Ct. at 606, 496 A.2d at 124 (emphasis supplied). In considering the language of § 1004(2)(a), the court held that, "[u]nder this section a landowner need not certify that he was unaware that a curative ordinance had been proposed; he need only certify that he was unaware that the municipality had resolved to consider such an ordinance *by publication of notice of hearings*." *Id.*, 90 Pa.Commonwealth Ct. at 607, 496 A.2d at 124–25 (emphasis supplied).

Here, although a committee had been formed to examine alternatives to the neighborhood commercial zoning district, none of the committee meetings was publicly advertised. (R109a). Thus, in keeping with the language of the statute, neither Claude nor James Herbert had been notified about the committee or its purpose through public advertisement. Hence, whether they had actual notice of the proposed alternative is immaterial. The language requires public notice, and the township admits the public notice was not given.

Therefore, we must conclude that the certification filed by the Herbert brothers was consistent with the procedural requirements stated in § 1004(2)(a) of the MPC.

### 3.

The landowners contend that the existing zoning ordinance fails to make provision for a "fair share" of multifamily housing by way of apartment development, and also a "fair share" of neighborhood commercial development.

The findings of fact yield the following data:

Total acreage of the Township = 10,460

Gamelands account for = $\underline{-1,204}$
Usable land area =        9,256

Residential = 83% or 7682 acres
   1.  Rural residential = 70% or 6479 acres
   2.  Suburban residential = 13% or 1203 acres
Non–Residential = 12.45% or 1152 acres
   1.  Highway commercial = 2.75% or 255 acres
   2.  Industrial = .36% or 33 acres
   3.  Planned Industrial = 9% or 833 acres
   4.  Planned Office Research = .35% or 32 acres
Miscellaneous (Interstates, etc.) = 4.55% or 422 acres

According to the statistics provided, 2.75% or 255 acres of the 9256, is specifically available in the highway commercial classification for apartment building and commercial development. Other multi-family housing development is allowed in planned residential developments; however, those provisions do not allow apartment houses.

The landowners argue that, because only 2.75% or 255 acres of the total 9256 acres is zoned for apartment buildings along with other commercial development, and because only 100 acres (1.08% of 9256) remains undeveloped in that classification, Marshall Township has not provided its "fair share" of these opportunities in an area determined to be a rapid growth region.

In the briefs submitted to this court, both the township and the landowners refer to the "fair share" test established by the Pennsylvania Supreme Court in *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977). In the *Surrick* case, the property owner brought an action to obtain a building permit to erect apartment buildings and townhouses within a single-family residential zoning district. The zoning hearing board denied the variance requested. The property owner appealed, based on the argument that the B district, which consisted of 43 of the 3,800 acres of available land (or 1.14%), was the only area in which apartment house development was permitted, along with commercial develop-

ment. Because the B district was already substantially developed, and there was no other area zoned for apartment buildings, the Court concluded that the ordinance should have permitted apartment construction more extensively.

In its analysis, the Court laid its foundation for the "fair share" principle by stating that, "communities must deal with the problems of population growth. They may not refuse to confront the future by adopting zoning regulations that effectively restrict population to near present levels...." *Id.*, 476 Pa. at 189, 382 A.2d at 108, (quoting *Concord Township Appeal*, 439 Pa. 466, 474, 268 A.2d 765, 768–69 (1970)). Further, "[t]o implement these concepts, we adopted the 'fair share' principle, which requires local political units to plan for, and provide land use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." *Id.*, 476 Pa. at 189, 382 A.2d at 108. The Supreme Court's decision set forth guidelines that must be considered in determining whether a community has provided for its "fair share" of a particular type of zoning. The court stated that, "an ordinance must bear a substantial relationship to the health, safety, morals or general welfare of the community." *Id.*, 476 Pa. at 188, 382 A.2d at 108.

According to the Supreme Court, the factors to be considered are:

1. Whether the community in question is a logical area for development and population growth. Also, whether its proximity to a large metropolis and the community and region's projected population growth figures have been taken into account.

2. The present level of development within the particular community, including population density, percentage of undeveloped land and percentage available for the development of multi-family dwellings.

3. Whether the challenged zoning scheme effects an exclusionary result, or alternatively, whether there is evidence of a primary purpose or exclusionary intent to zone out the natural growth of the population.

The Supreme Court also offered guidelines for determining whether the exclusion was partial, and if so, what effect a partial exclusion would have on the validity of the zoning ordinance. With respect to partial exclusions, as in the present case, the Court held that the inquiry must take into account the percentage of the community's land available under the zoning ordinance for multi-family dwellings. "This percentage must be considered in light of current population growth pressure within the community as well as the region, and in light of the total amount of undeveloped land in the community." *Id.*, 476 Pa. at 194, 382 A.2d at 111. If the amount of land zoned for multi-family dwellings is disproportionate to the land zoned for other uses, the ordinance will be said to be exclusionary.

Applying the "fair share" principle discussed in *Surrick* to the facts in this case, we conclude that the township has presented sufficient evidence to determine that the challenge to Marshall Township's present zoning ordinance should be denied.

Again, our scope is limited to determining whether the board committed an error of law or an abuse of discretion. We are confined to reviewing the testimony presented in the record and must determine whether there is substantial evidence to support the board's decision.

In considering the factors set forth in *Surrick*, we must look at the testimony presented to determine whether the township has provided its "fair share" of the multi-family dwellings and neighborhood commercial space. The testimony presented by the township's witness, Ms. Roberta Sarraf, a planning consultant, indicated that there was sufficient multi-family housing available in relation to the present and projected census data available for the Marshall Township and surrounding region. The 1980 census report, according to Ms. Sarraf, indicated that the population of Marshall in 1980 was 2,594. In 1984, the township experienced a gain of 284 people to bring the population to 2,878 people. The projection for the year 2,000 was estimated to be 3,632 people. Ms. Sarraf stated that, although Marshall

is located in a growth region, the projections did not indicate a rapid population growth rate at the present time or in the immediate future.

According to the Supreme Court in *Surrick*, the township must show that it can adequately accommodate the population growth rate predicted both now and in the future. According to the record (R89a), the 1980 census indicated that the total number of housing units in Marshall was 900 units. Of the 900 units, 68 were multi-family units or 7.6% of the total. The census defines multi-family dwellings as 3 or more units. Currently, the witness estimated 110 multi-family units out of a total of 1050 units, which would bring the percentage of multi-family units to about 9% or 10%.

The landowners argue that the land available for planned residential usage is not land on which apartments may be built. Those provisions allow only for multi-family dwellings other than apartment development—namely, townhouses and quadroplexes. Furthermore, there is only limited land available in the highway commercial zone for such use.

However, the question is, does the township provide its "fair share" of the multi-family dwellings, which includes apartments. The evidence supports a conclusion that the township does provide its "fair share" of multi-family dwellings. With apartments permitted in the highway commercial zone, 2.75%, and other multi-family construction in planned residential development, conditionally allowable in the remaining residential areas, and given the slow population growth rate of approximately 26% between 1984 and 2000, as predicted by the Census Bureau, we conclude that the township has provided for multi-family dwellings in proportion to the needs of the community.

4.

The landowners have also alleged that the present zoning ordinance makes no provision for a neighborhood commercial district, other than in the same heavily utilized

highway commercial district. They argue, therefore, that the ordinance is exclusionary in that additional respect.

This court, in *Sullivan v. Board of Supervisors of Lower Makefield Township*, 22 Pa. Commonwealth Ct. 318, 348 A.2d 464 (1975), in utilizing the "fair share" principle, discussed the burden placed on the landowner to show a lack of "fair share" as to commercial uses.

In that case, the township had restricted commercial use to C-1 and C-2 districts, consisting of a total of 115 acres or about 1% of the total area of the municipality. The appellant's land, on which he wished to build and operate a nursery and garden supply business, was located in a residential district. The township denied his request, and he appealed on the basis that the ordinance in question provided only a token amount of land for commercial use, and thus was exclusionary.

This court held that:

No one can seriously contend that a community must allocate an equal amount of land to both residential and commercial development in order to accept its 'fair share' of growth. This being so, it is not sufficient, absent a showing of total prohibition, for a developer to merely point out that a relatively small area of a municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served.

*Sullivan*, 22 Pa. Commonwealth Ct. at 324, 348 A.2d at 467.

Here commercial usage is not limited to the highway commercial zoning area. Commercial development may also take place in the Industrial district and the Planned Industrial district. All three areas have vacant space available for commercial uses.

However, by pressing for "neighborhood commercial," the landowners here are questioning the absence of zoning provisions for small-scale retail and service uses within, or close to, residential districts, for the convenience of residents. But we have found no authority for requiring that

every municipality's zoning ordinance must make provision for every planning variation or combination which has been conceived, nor have the landowners cited any such authority.

In conclusion, this court holds that the existing zoning ordinance is not exclusionary. Marshall Township has provided its "fair share" of both multi-family dwellings and commercial development proportionate to its present and projected population growth rate for that area. The board therefore did not abuse its discretion in denying the landowners' challenge. The trial court's order is affirmed.

## ORDER

NOW, June 9, 1989, the order of the Court of Common Pleas of Allegheny County, at No. S.A. 1235 of 1987, dated September 8, 1988, is affirmed.

McGINLEY, J., concurs in the result only.