590 A.2d 1321

**EAST MARLBOROUGH TOWNSHIP, Appellant,**

**v.**

**Richard JENSEN, Edward J. Carney, Jr.
and Douglas Carney, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 4, 1991.

Decided April 23, 1991.

Reargument Denied June 18, 1991.

298

Fronefield Crawford, Jr., with him, John J. Mahoney, Crawford, Wilson, Ryan & Agulnick, P.C., West Chester, for appellant.

Edward J. Carney, Jr., Media, for appellees.

Before COLINS and McGINLEY, JJ., and SILVESTRI, Senior Judge.

COLINS, Judge.

East Marlborough Township (Township) appeals from an order and opinion of the Court of Common Pleas of Chester County (Common Pleas) which partially reversed the decision of the Township's Board of Supervisors (Board) and held that the Township's zoning ordinance (ordinance) failed to provide a "fair share" of land for commercial development.

On July 24, 1986, Richard Jensen, Edward J. Carney, Jr. and Douglas F. Carney (developers) filed a challenge to the validity of the ordinance (challenge to validity) and two proposed curative amendments pursuant to what is now Section 916.1 of The Pennsylvania Municipalities Planning Code.[1] Developers alleged that the ordinance was exclusionary and invalid, because it failed to provide for a fair share of rental housing, of multi-housing units, and of land for commercial development.

After thirteen hearings, the Board decided that developers' challenge to validity was without merit, and developers appealed to Common Pleas. Upon developers' motion, Common Pleas appointed a referee to take additional testimony. The referee recommended that Common Pleas partially reverse the Board's decision, because the Township ordinance did not provide a fair share of land for commercial development. On May 8, 1990, Common Pleas adopted the

1. Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10916.1.

referee's report and recommendation as its own. Common Pleas' order reversed the Board, determining that the ordinance was exclusionary and invalid "in that it [did] not provide sufficiently for commercial uses in the township" and it failed "to provide a 'fair share' of land for commercial uses."

Developers are the equitable owners of a 27.715 acre tract of land currently zoned RB Residential but adjoining land zoned C-1 Village Commercial. The challenge to validity states that the developers "propose[d] to erect and construct a commercial and multi-family residential [sic] for rental purposes." Common Pleas' finding of fact No. 2 states that developers sought "to construct a combined development of fifty (50) townhouses and a neighborhood shopping center."

The Township timely filed a Notice of Appeal to this Court and presents three issues for our review: (1) whether the ordinance must provide for shopping centers as discrete uses; (2) whether the ordinance provides for a fair share of land for commercial development; (3) whether developers are now bound by the plan submitted with their challenge to validity.

"Where additional evidence is taken, and the lower court decides the matter *de novo*, our review is limited to a determination of whether the court committed an error of law or an abuse of discretion." *Nassif v. Board of Adjustment of the City of Pittsburgh*, 64 Pa. Commonwealth Ct. 15, 20, 438 A.2d 1039, 1042 (1982). We must conclude that Common Pleas abused its discretion if its findings of fact are not supported by substantial evidence. *Cambridge Land Company v. Marshall Township*, 126 Pa. Commonwealth Ct. 437, 560 A.2d 253 (1989).

Correctly relying on *Sultanik v. Board of Supervisors of Worcester Township*,[2] the Township first argues that it has no duty to ensure that its ordinance provides for shopping centers as discrete uses. In *Sultanik*, the chal-

2. 88 Pa. Commonwealth Ct. 214, 488 A.2d 1197 (1985).

lenged zoning ordinance provided for retail sales in commercial districts, but the challenger argued that the zoning ordinance was invalid, because it did not specifically zone for shopping centers. This Court, holding that the zoning ordinance did not de jure exclude shopping centers, stated that "a shopping center constitutes simply a particular configuration of commercial uses, rather than a separate land use category." *Id.*, 88 Pa.Commonwealth Ct. at 231, 488 A.2d at 1205. Pursuant to *Sultanik,* we conclude that the Township's ordinance need not provide for shopping centers as a discrete use.

The Township next argues that, pursuant to the standard of *Sullivan v. Lower Makefield Township Board of Supervisors,*[3] the ordinance provides for a fair share of land for commercial development, because developers did not prove that the needs of the township's residents for commercial development are not being adequately met.

■ To determine whether a municipality has provided for a fair share of a particular type of zoning, we must utilize the three-part analysis set forth in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977). First, we must inquire "whether the community in question is a logical area for development and population growth." Second, we must examine the "present level of development within the particular community." Third, we must determine "whether the challenged zoning scheme effected an exclusionary result or, alternatively, whether there was evidence of a 'primary purpose' or exclusionary intent to zone out the natural growth of population." *Id.*, 476 Pa. at 192, 382 A.2d at 110.

■ Additionally, pursuant to *Sullivan,* developers have the burden of proving that the ordinance de facto excludes commercial development. In that case, this Court stated,

We recognize that commercial development and housing development bear a definite relationship to one another, but, in determining the 'fair share' of growth on a case-by-case basis, we must consider that a municipality may

**3.** 22 Pa. Commonwealth Ct. 318, 348 A.2d 464 (1975).

have valid reasons for regulating commercial growth which might not suffice if those same reasons were advanced in support of a single-family dwelling restriction or a residential minimum lot size.... No one can seriously contend that a community must allocate an equal amount of land to both residential and commercial development in order to accept its 'fair share' of growth. This being so, it is not sufficient, absent a showing of total prohibition, for a developer to merely point out that a relatively small area of a municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served.

*Id.,* 22 Pa.Commonwealth Ct. at 323–24, 348 A.2d at 467.

■ Applying the *Surrick* and *Sullivan* analyses to the facts of this case, we determine that developers have not met their burden of proving that the present ordinance does not meet the Township's residents' need for commercial development. Although the record contains substantial evidence to satisfy the first part of the *Surrick* analysis, that the Township is in an area where development and population growth are logical, the record does not contain substantial evidence to prove the second part, that present commercial development is inadequate, or the third part, that the ordinance has excluded commercial development.

Common Pleas found that the Township's C–1 Village Commercial District consists of 75.65 acres and that its C–2 Highway Commercial District consists of 69.65 acres. The record reveals that both districts have land available for commercial development. Developers seek to build a neighborhood shopping center, and the record establishes that such a shopping center requires between 30,000 and 100,000 square feet of space. Common Pleas made numerous findings of fact pertaining to the need for developers to assemble multiple parcels of land in order to build such a shopping center. Several of the pertinent findings of fact are as follows:

44. D. In order to accommodate a neighborhood shopping center in the Willowdale Southwest quadrant, all of

the parcels would have to be assembled since the road frontage parcels along [route] 926 are of insufficient depth to accommodate any commercial development other than strip development.

45. Of the 75.65 gross acres zoned C–1 Village Commercial, without assemblage, only 18 acres, or 2.4% of the C–1 area is suitable for a neighborhood shopping center development.... By comparison to the totality of acreage within the township, less than .002% of C–1 land is available for other than single site or strip commercial development.

.    .    .    .    .

50. The shallow depth of the C–2 zone, split as it is by Route 1, encourages strip type or single use commercial development.

.    .    .    .    .

52. Unless one is able to assemble land in the C–2 District, the township has not provided a C–2 Commercial District with sufficient land mass area to accommodate the type of commercial development that is a normal incident of a suburbanizing community.

53. Unless one is able to assemble land in both the C–1 and C–2 Districts, the township has not provided sufficient land mass area to accommodate the type of commercial development that is a normal incident of a suburbanizing community.

54. Assuming 'assembled' availability for suburban commercial development of 69.65 acres zoned C–2, when combined with the C–1 zoned land that can reasonably be devoted to similar commercial development, less than one percent (1%) of the township is reasonably and rationally zoned for modern commercial development.

Developers' argument and Common Pleas' findings of fact imply that developers have a right to a zoning scheme guaranteeing their ability to build a neighborhood shopping center. "But [sic] we have found no authority for requiring that every municipality's zoning ordinance must make provi-

sion for every planning variation or combination which has been conceived, nor have the landowners cited any such authority." *Cambridge Land Company*, 126 Pa. Commonwealth Ct. at 449–50, 560 A.2d at 260. In essence, developers are arguing that the ordinance must provide for sufficient space for developers to construct a modern "mall" type shopping center rather than merely providing for a "fair share" of land for commercial development. This, as previously discussed, is simply not the present status of the law in the Commonwealth.

Having determined that developers have not met their burden of proving that the Township ordinance de facto excludes commercial development, there is no need for us to address the Township's third issue regarding whether developers are now bound by the plan submitted with their challenge to validity.

For the foregoing reasons, the order of Common Pleas is reversed.

## ORDER

AND NOW, this 23rd day of April, 1991, the order of the Court of Common Pleas of Chester County in the above-captioned matter is reversed.