IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bloomsburg Town Center, LLC,   :   CASES CONSOLIDATED
      Appellant   :
           :
    v.         :
           :   No. 151 C.D. 2023
Town of Bloomsburg     :

Bloomsburg Senior Living, LLC,   :
      Appellant   :
           :
    v.         :
           :   No. 152 C.D. 2023
Town of Bloomsburg     :   Argued: May 7, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON         FILED: June 3, 2024

    These consolidated cases are before this Court on appeals by Bloomsburg Town Center, LLC (Town Center) and Bloomsburg Senior Living, LLC (Senior Living) (jointly, Applicants) from denials of their zoning appeals by the Court of Common Pleas of the 26th Judicial District, Columbia County Branch (Trial Court). The Trial Court affirmed denials by the Town of Bloomsburg (Bloomsburg) of a curative amendment and a substantive challenge to Bloomsburg's zoning ordinance (Zoning Code).[1] Upon review, we affirm.

---

[1] TOWN OF BLOOMSBURG, PA., CODE OF ORDINANCES ch. 27 Zoning (1986).

## I. Background

Matthew J. Zopetti, Jr. (Zopetti) is a real estate developer who owns all or part of both Applicants, as well as a third entity, Bloomsburg Industrial Ventures, LLC (Industrial Ventures). Zopetti is the Managing Member of all three entities. In previous separate litigation, Industrial Ventures, which is not a party here, asserted a validity challenge alleging that the Zoning Code was exclusionary because it did not provide any permitted use that encompassed a Transitional Living Facility (TLF) that Industrial Ventures wanted to build on its property located at the corner of 6th and Railroad Streets in Bloomsburg. The property was located partly in the Business Campus (BC) zoning district and partly in the Industrial Park (IP) zoning district. This Court concluded the Zoning Code as it then existed was exclusionary and granted site-specific relief to allow the construction of the TLF on the portion of the designated property in the BC zoning district. *See Bloomsburg Indus. Ventures, LLC v. Town of Bloomsburg*, 242 A.3d 969 (Pa. Cmwlth. 2020). Industrial Ventures did not appeal the partial denial of relief or seek a variance for the IP portion of the property, and it never built the proposed TLF.

On May 22, 2019, while an appeal in *Industrial Ventures* was pending, Bloomsburg amended the Zoning Code by enacting Ordinances 993 through 995 (Amending Ordinances), which provided for permitted uses as homeless shelters, various types of substance abuse treatment facilities,[2] and halfway houses for persons on parole or probation. *See Bloomsburg Town Ctr., LLC v. Town of Bloomsburg* (C.P. Columbia Cnty., Nos. 2021-CV-813 & 2021-CV-814, filed Jan.

---

[2] The permitted substance abuse treatment facilities include: Substance Abuse Treatment Facility, Substance Abuse Detoxification Treatment Facility, Non-Hospital Drug Free Residential Substance Abuse Treatment Facility, and Partial Hospitalization Substance Abuse Treatment Facility. Reproduced Record (R.R.) at 5a.

23, 2023) (Trial Ct. Op.) at 2. The Amending Ordinances did not specifically permit the use defined by Industrial Ventures as a TLF.[3] *Id.* The Amending Ordinances established the uses only by special exception, and no single zoning district allowed all of the uses encompassed in the TLF definition. *Id.* Thus, as amended, the Zoning Code still does not expressly accommodate a TLF as such. However, the Zoning Code provides separately for various individual uses that are potentially encompassed within Applicants' definition of a TLF use. *Id.* at 4.

In January and March 2021, Applicants sought curative amendments for site-specific relief to permit TLFs on two properties in Bloomsburg. Town Center's relevant property is located in the IP zoning district on West 11th Street in Bloomsburg, and Senior Living's property is located in the BC and IP zoning districts on West 5th Street.[4] Reproduced Record (R.R.) at 2a & 410a.

Applicants define a TLF as

[a] place that includes housing or lodging and meals and which provides a safe[,] structured, supervised and supportive drug and alcohol-free environment, that may include peer support, employment counseling, job placement, financial management assistance, and other programs and services to individuals making the transition from controlled group quarters living to one of independent or semi-independent living in ordinary society; including but not limited to incarcerated individuals, individuals being released from drug and alcohol addiction treatment programs and/or individuals having undergone psychiatric treatment and being

---

[3] Industrial Ventures' definition of a TLF was substantially the same as that proposed by Applicants, as quoted *infra*.

[4] The parties dispute whether the evidence of record substantiates that Senior Living is the record owner of the West 5th Street property. *See* R.R. at 410a-11a, 417a-18a & 424a. However, in light of our disposition of this appeal in favor of Bloomsburg on other grounds, we do not reach this issue.

3

> declared mentally competent and ready to resume life in ordinary society.

R.R. at 2a & 411a.  No single zoning district in Bloomsburg allows as permitted uses all of the various uses encompassed within the definition of a TLF.  Trial Ct. Op. at 2.  In these consolidated actions, Applicants are challenging the validity of the Zoning Code, as amended, because Bloomsburg did not adopt their proposed definition of a TLF and did not provide in any single zoning district for all of the potential uses encompassed in that definition.

Bloomsburg's Town Council (Council) denied Applicants' requests for a curative amendment that would allow all of the varied uses under the TLF umbrella in one zoning district.  Specifically, Bloomsburg observed that Applicants' expert witness neither performed nor reviewed any studies regarding the housing of individuals from the various TLF categories in a single facility.  R.R. at 8a-9a, 135a-36a & 416a.  By contrast, Bloomsburg established categories for various types of facilities, as reflected in the Amending Ordinances, after "detailed discussions with experts in the field." *Id.* at 9a & 417a.  Bloomsburg's expert witness opined that the Amending Ordinances were reasonable because "they were developed after communications with experts and consultants in the field." *Id.*  Moreover, no permit request had ever been submitted by either of the Applicants for a TLF.  In addition, Bloomsburg found that Applicants failed to address the mandatory factors that must be considered under the Pennsylvania Municipalities Planning Code (MPC)[5] in addressing a request for a curative amendment.  Further, with regard to Senior Living, Bloomsburg found that the evidence of record failed to establish Senior Living's ownership of the West 5th Street property on which it proposed to construct a TLF.  *Id.* at 411a, 418a & 424a.

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

Applicants appealed the denials to the Trial Court. On appeal, the Trial Court took no new evidence and denied Applicants' substantive challenge and request for a curative amendment. *See* Trial Ct. Op. The Trial Court found that, although no single zoning district allows all of the uses included under the umbrella of a TLF, the Amending Ordinances "provide in separate fashion for the elements of a [TLF]." *Id.* at 4. The Trial Court concluded:

> In our view [Applicants'] concept of a [TLF] is nothing more than a business model which it advocates is a single 'use' excluded by the ordinance. As the Commonwealth Court instructs, the governing body is not required to accommodate all business plans. Accordingly, we find that the . . . Zoning [Code], as amended, is not unconstitutionally exclusionary in its failure to include [Applicants'] business model of a [TLF].

*Id.* at 5.

Applicants then appealed to this Court.

## II. Issues

On appeal,[6] Applicants argue that the Zoning Code is *de jure* exclusionary of the TLF use, notwithstanding the Amending Ordinances, because it facially fails to provide for that use anywhere in Bloomsburg. In addition or in the alternative, Applicants argue that the Zoning Code is *de facto* exclusionary of the TLF use, notwithstanding the Amending Ordinances, because although it facially provides for various individual uses included under the umbrella of a TLF, it does

---

[6] In a zoning appeal regarding an applicant's validity challenge to a zoning ordinance, where a trial court has taken no additional evidence, this Court's review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion. *Cambridge Land Co. v. Marshall*, 560 A.2d 253, 255 (Pa. Cmwlth. 1989) (additional citation omitted). "We are confined to reviewing the testimony presented in the record and must determine whether there is substantial evidence to support the board's decision." *Id.* at 258.

5

so in different zoning districts, imposes various other restrictions, and therefore actually operates to prohibit the use of a TLF.

Bloomsburg responds that the Amending Ordinances reasonably allow various separate uses encompassed under the umbrella of the TLF definition. Bloomsburg posits that the combination of potential uses assembled in the TLF definition arises merely from Applicants' business model and that those uses need not be combined or all permitted in the same zoning district. Bloomsburg also points out that neither Applicant has ever applied for a permit for a TLF and that Applicants have never addressed the mandatory factors under the MPC.

## III. Discussion

"A party challenging a zoning ordinance has a heavy burden. '[A] presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it.'" *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285, 287 (Pa. Cmwlth. 2000) (quoting *Nat'l Land & Inv. Co. v. Kohn*, 215 A.2d 597, 607 (Pa. 1965)). Thus, Applicants bear the burden of showing that the Zoning Code is exclusionary. *See E. Marlborough Twp. v. Jensen*, 590 A.2d 1321, 1323 (Pa. Cmwlth. 1991).

> To prove total or effective exclusion of a permitted use, the challenger can show that the ordinance is either *de jure* or *de facto* exclusionary. A *de jure* exclusion exists where an ordinance, on its face, totally bans a legitimate use. A *de facto* exclusion exists where an ordinance permits a use on its face, but when applied, acts to prohibit the use throughout the municipality.

*Interstate Outdoor Advert. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024-25 (Pa. Cmwlth. 2012) (citations omitted); *see also Indus. Ventures*, 242 A.3d 969; *Shortt v. E. Marlborough Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No.

6

1401 C.D. 2015, filed March 2, 2017), slip op. at 3-4 n.2 (additional citations omitted).[7]

In addition, in evaluating an application for a curative amendment, the municipality must address the factors set forth in Section 609.1(c) of the MPC,[8] which provides:

> (c) The governing body of a municipality which has determined that a validity challenge has merit may accept a landowner's curative amendment, with or without revision, or may adopt an alternative amendment which will cure the challenged defects. The governing body shall consider the curative amendments, plans and explanatory material submitted by the landowner and shall also consider:
>
> > (1) the impact of the proposal upon roads, sewer facilities, water supplies, schools and other public service facilities;
> >
> > (2) if the proposal is for a residential use, the impact of the proposal upon regional housing needs and the effectiveness of the proposal in providing housing units of a type actually available to and affordable by classes of persons otherwise unlawfully excluded by the challenged provisions of the ordinance or map;
> >
> > (3) the suitability of the site for the intensity of use proposed by the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features;
> >
> > (4) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected or destroyed, the tolerance of the

---

[7] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[8] Added by the Act of June 1, 1972, P.L. 333, 53 P.S. § 10609.1.

resources to development and any adverse environmental impacts; and

(5) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare.

53 P.S. § 10609.1(c).

## A. Combining Uses in a Business Model

A zoning ordinance is improperly exclusionary if it fails to provide for all reasonable uses, but it need not provide for a combined use merely to accommodate an applicant's business model. For example, in *Cambridge Land Co. v. Marshall*, 560 A.2d 253 (Pa. Cmwlth. 1989) (*en banc*), an applicant wanted to construct garden apartments and commercial structures on property zoned for single-family residences. Although the zoning ordinance included commercial and industrial zoning districts that would have allowed the proposed commercial structures, the applicant challenged the zoning ordinance as exclusionary because it did not include a "neighborhood commercial" zoning district that would have allowed both of the applicant's proposed uses. *Id.* at 255 & 259-60. In rejecting the applicant's challenge to the zoning ordinance, this Court explained that,

> by pressing for [a] "neighborhood commercial[]" [zoning district,] the landowners here are questioning the absence of zoning provisions for small-scale retail and service uses within, or close to, residential districts, for the convenience of residents. But we have found no authority for requiring that every municipality's zoning ordinance must make provision for every planning variation or combination which has been conceived . . . .

*Id.* at 260; *see also E. Marlborough*, 590 A.2d at 1324 (quoting *Cambridge Land* and explaining that a zoning ordinance that reasonably provided for commercial

8

development did not need to provide space for "a modern 'mall' type shopping center . . .").

In *Montgomery Crossing*, an applicant challenged a zoning ordinance and sought site-specific relief to construct a shopping center in a residential zone. The lower court found that the zoning ordinance improperly excluded shopping centers because, although all of the individual uses proposed for potential inclusion in the shopping center were facially permitted in one commercial zoning district, square footage limitations in that zoning district precluded inclusion of some potential uses such as big box stores and movie theaters, while other commercial districts allowing more square footage were more limited in their permitted uses. 758 A.2d at 287-88 & n.3. This Court reversed. We rejected the applicant's argument that the zoning ordinance operated to preclude the proposed shopping center, explaining, "'a shopping center constitutes simply a particular configuration of commercial uses, rather than a separate land use category in itself.'" *Id.* (quoting *Sultanik v. Bd. of Supervisors of Worcester Twp.*, 488 A.2d 1197, 1205 (Pa. Cmwlth. 1985) (*en banc*) (additional citation omitted)); *see also Montgomery Crossing*, 758 A.2d at 289 n.6 (explaining that "[a] mall type shopping center is also a combination of many commercial uses within the confines of a single building"). Although a municipality "must in its zoning scheme provide for all reasonable uses, it is not required to zone for every business model . . . ." *Montgomery Crossing*, 758 A.2d at 289 (additional citation omitted).

In *Shortt*, the applicants owned a bed and breakfast and wanted to be able to rent out their entire facility to third parties for events. They envisioned what they described as a "place of private assembly" that would be "a place to accommodate meetings, events, and other private group assemblies, including,

without limitation, private parties, business conferences, weddings, seminars and similar activities and may or may not include the providing of catered meals to accommodate the attendees." *Shortt*, slip op. at 2. They claimed the township zoning ordinance was *de jure* exclusionary because, although the anticipated private assembly activities could be held in local hotels and other commercial facilities, there was no zoning district that provided for a "place of private assembly" as a principal use. *Id.* at 5. In rejecting that argument, this Court observed that "zoning ordinances . . . regulate 'functions' – *i.e.*, uses to which the land is being put – not the business model behind that use [sic]." *Id.* at 9. Citing *Sultanik*, *East Marlborough*, *Cambridge Land*, and *Montgomery Crossing*, we explained:

> What the above cases demonstrate is that a zoning ordinance is not exclusionary just because it does not have a defined use that recognizes a landowner's business model or it does not mention every conceivable commercial operation deriving from a combination of legitimate commercial uses. Rather, the question is whether each of the component uses, not the business model, [is] accommodated by the zoning ordinance. Moreover, a business design that merely attempts to patch together other discrete, commercial uses is not a new, discrete use that a [municipality] has a duty to ensure.
>
> Similar to a shopping center constituting a particular configuration of commercial uses, [l]andowners' [p]roposed [u]se is best understood as a business model that essentially allows someone to lease their property to undertake functions that [l]andowners admit, with some quibbles, are permitted uses in other . . . zoning districts. Although their business model may be different, as long as the uses for which the property is being sought are allowed in a [zoning] district under the [o]rdinance, the [o]rdinance is not exclusionary.

*Shortt*, slip op. at 11. We added that "if a smaller version of a commercial use may be constructed [under the existing zoning ordinance, the municipality] need not zone

10

specifically to allow larger versions to avoid the conclusion that the[] ordinance is exclusionary." *Id.* at 10 (quoting *Montgomery Crossing*, 758 A.2d at 289) (additional quotation marks and additional citation omitted).

Here, to show a *de jure* or *de facto* exclusion, Applicants must demonstrate, respectively, that the Zoning Code improperly fails to provide for a TLF use or that its effect is to exclude that use. As the decisions discussed above illustrate, Applicants' burden of proof includes demonstrating that a TLF use, as defined by them, is a single use as opposed to a group of separate uses combined in their business plans' TLF definition.

Both Bloomsburg and the Trial Court concluded that a TLF is a business model and not a single use. Bloomsburg observed that Applicants' definition of a TLF "can encompass a housing use for most everything . . . ," in that it may, but need not, include various services, is not limited to any one group, and imposes no time limit on a resident's stay. R.R. at 13a-14a & 422a-23a. Similarly, the Trial Court opined that Applicants "desire to include homeless shelters, substance abuse treatment facilities,[9] halfway houses for persons on parole or probation, and psychiatric step-down centers all in one facility. In our view this represents a specific business model . . . ." We agree.

Accordingly, we agree with Bloomsburg that Applicants have not met their burden of demonstrating entitlement to their requested TLF use as such. A TLF is not a single use, but a combination of uses proposed under Applicants' specific business model. Bloomsburg could reasonably provide separately for the various uses and did not have to permit all of them in a single zoning district.

---

[9] We note that the definition of a TLF does not propose offering any treatment. However, that does not affect our analysis or the validity of the Trial Court's conclusion.

Moreover, Applicants have not sufficiently analyzed, defined, and explained each of the proposed uses encompassed under the umbrella of the TLF definition to demonstrate that any one of those uses is not accommodated either expressly or implicitly in the Zoning Code.  In that regard, we observe further that the uses in the TLF definition are vague and speculative to the extent that Applicants have not yet determined which of those uses they will actually make of their respective properties; and because neither of the Applicants has yet presented a permit application for a specific facility, *see* R.R. at 15a & 424a, there is no written proposal that could offer clarification of how Applicants intend to apply their definition of a TLF.

For these reasons, we agree with Bloomsburg and the Trial Court that Applicants have not sustained their burden of showing entitlement to a curative amendment.

### B. MPC Factors

Bloomsburg concluded that Applicants failed to address the impact factors set forth in Section 609.1(c) of the MPC, 53 P.S. § 10609.1(c).[10]  R.R. at 15a & 424a.  The parties disagree about which of them has the burden of providing evidence concerning these factors.  *Compare* Appellants' Br. at 33-34 (observing that Bloomsburg offered no evidence that a TLF would create "an increase in impact on the roads, sewer facilities, water supplies, schools or other public service facilities . . ."), *with* Appellee's Br. at 45-46 (positing that Applicants bore the burden of "presenting evidence and testimony regarding the impacts that the proposed [TLF] will have on the surrounding neighborhood and [Bloomsburg] as a whole . . ." and

---

[10] The MPC factors are quoted in full *supra* at 7-8.

that Applicants "did not present adequate evidence or testimony to demonstrate the extent of the specific impacts that the proposed [TLF] would have on the surrounding community . . .").

We are aware of no authority expressly discussing the allocation of this burden.[11] Section 609.1(c) of the MPC provides that in reviewing a request for a curative amendment, a municipality "shall" consider the enumerated impact factors. 53 P.S. § 10609.1(c). That requirement, however, does not necessarily impose responsibility on the municipality to perform its own investigation or study of those impacts. As a practical matter, the applicant proposing a curative amendment for a specific use in a specific location is the party in the better position to have or acquire information concerning the impacts the proposed use will have. Also, as the party seeking relief for a use, the applicant should bear the cost and burden of obtaining any information concerning those impacts that the municipality needs in order to perform its obligation to consider the impact factors mandated by the MPC. This is especially true here, where Applicants have never submitted a specific permit application providing details of the proposed construction or specific numbers of persons to be accommodated in a particular TLF. Thus, Bloomsburg had no information on which to base any consideration of the MPC impact factors. Accordingly, we agree with Bloomsburg's position that Applicants bore the burden of providing evidence of the impacts a TLF would have on the surrounding area in

---

[11] However, in *Bray v. Zoning Board of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980), this Court reasoned that, in considering specific criteria for a special exception under Philadelphia's zoning ordinance, the burden of both evidence and persuasion was on the applicant regarding elements to be considered by the zoning board of adjustment including impacts on traffic congestion, fire and safety, overcrowding, residential density and lot coverage, transportation, and community facilities such as water and sewer. *Id.* at 913-14. The impact factors in Section 906.1 of the MPC relate to analogous considerations.

13

order to allow Bloomsburg to properly consider those impacts. Having failed to do so, Applicants were not entitled to relief.

## IV. Conclusion

For all of these reasons, we conclude that Bloomsburg properly denied Applicants' requests for a curative amendment to the Zoning Code, and the Trial Court properly denied Applicants' appeals. Based on the foregoing discussion, the Trial Court's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bloomsburg Town Center, LLC, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 151 C.D. 2023 |
| Town of Bloomsburg | : | |
| | | |
| Bloomsburg Senior Living, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 152 C.D. 2023 |
| Town of Bloomsburg | : | |

# **O R D E R**

AND NOW, this 3rd day of June, 2024, the order of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch, filed January 23, 2023 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge