**Joshua SMITH t/a Advert Sign Solutions, Appellant**

v.

**HANOVER ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2013.

Decided Oct. 16, 2013.

Daniel Carn, York, for appellant.

John L. Senft, York, for appellee.

BEFORE: LEADBETTER, Judge, BROBSON, Judge and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Joshua Smith, t/a Advert Sign Solutions (Applicant), appeals from an order of the York County Court of Common Pleas (Trial Court) that affirmed the Hanover Borough Zoning Hearing Board's (Board) denial of his applications for permits to erect two billboards on properties in Hanover Borough (Borough). We affirm.

## I. BACKGROUND

In November 2011, Applicant filed applications for permits to erect two digital LED illuminated billboards on separate properties on Carlisle Street (State Route 94) in the Borough. (810 Carlisle Street Sign Application, November 28, 2011 (810 Carlisle Application), Certified Record (C.R.) at 1–2, 101–08; 1225 Carlisle Street Sign Application, November 21, 2011 (1225 Carlisle Application), C.R. at 4–5, 103, 110–19.) Each proposed billboard would be two-sided, 35 feet high and would have 242 square feet in sign area on each side. (810 Carlisle Application, C.R. at 103; 1225 Carlisle Application, C.R. at 112.) One of the billboards was to be located in the Borough's Local Business zoning district at 810 Carlisle Street and would have digital LED on one side and a static display on the other side. (810 Carlisle Application, C.R. at 103.) Applicant estimated that the cost of construction for this billboard was $110,000. (*Id.*) The second billboard was to be located in the Borough's Shopping Center district at 1225 Carlisle Street and would have digital LED display on both sides with an estimated cost of construction of $180,000. (1225 Carlisle Application, C.R. at 112.) Applicant, the owner of an outdoor advertising company, did not own either parcel but had entered into easement agreements with the property owners. (Minutes of January 16, 2012 Board Meeting (1/16/12 Minutes) p. 15, C.R. at 43; 810 Carlisle Application, C.R.

at 102; 1225 Carlisle Application, C.R. at 111.)

The Hanover Borough Zoning Ordinance (Zoning Ordinance) does not permit billboards at the proposed sites in the Local Business and Shopping Center districts. Instead, the Zoning Ordinance permits "advertising sign[s]," defined as any "sign which directs attention to a business, product, service, or activity, sold or conducted at a location other than upon the premises where the sign is located," only in the Heavy Industry zoning district. (Zoning Ordinance, Art. XXI §§ 140–114–140–116, C.R. at 318–21; Hanover Borough Sign Ordinance of 1975 (Sign Ordinance) § 102, C.R. at 334–36.) The Zoning Ordinance limits billboard signs to a maximum size of 300 square feet and a maximum height of 25 feet for free-standing billboards. (Zoning Ordinance, Art. XXI § 140–116, C.R. at 320–21; Sign Ordinance §§ 102, 106, 107.3(A), C.R. at 334–36, 343–45.) The Zoning Ordinance permits "business sign[s]," defined as any "sign which announces or directs attention to a business, product, service, or activity sold or conducted on the premises where such sign is located," in both the Local Business and Shopping Center districts with a maximum height of 25 feet for free-standing business signs. (*Id.*)

On November 29, 2011, the Borough's Code Enforcement Officer denied both applications on the grounds that the proposed signs were not permitted in the Local Business and Shopping Center districts. (Denial Letters, C.R. at 3, 6.) Applicant appealed the permit denials to the Board, arguing that the billboards were a permitted accessory use and that the Zoning Ordinance unconstitutionally excluded billboards from the Borough. (Appeal Letter, December 20, 2011, C.R. at 7–8.)

The Board held evidentiary hearings on Applicant's appeal from the sign permit denials on January 16, 2012 and February 20, 2012. At the hearings, Applicant testified regarding his applications and he also called two expert witnesses, John Caianiello and Jack Powell. Caianiello, a consultant for small to mid-size billboard companies, testified that the advertising revenue for a billboard is based on the amount of passing automobile traffic on a daily basis and the estimated daily number of cars that would pass a billboard in the Heavy Industry district was 3,522. (1/16/12 Minutes pp. 24–26, C.R. at 51–54.) He opined that the Heavy Industry district was not an "economically practical" location for billboards, calculating that the income that the proposed billboards could generate in the Heavy Industry district was less than the installation and maintenance costs amortized over a ten-year period. (1/16/12 Minutes pp. 22–28 & Applicant Exhibit, C.R. at 50–56, 124.) Caianiello also testified that the size of Applicant's proposed billboards, 242 square feet, was smaller than billboard industry standards, which range from 288 square feet to 672 square feet. (1/16/12 Minutes pp. 29–31, C.R. at 57–59.)

Powell, an engineer, testified that a 35-foot billboard height is compatible with the speed limit at Applicant's proposed locations and does not create traffic hazards. (1/16/12 Minutes pp. 34–36, C.R. at 62–64.) Powell also opined that a 35-foot high billboard was not as high as roof-top signs authorized by the Zoning Ordinance, and that billboards would need to be higher than on-premises signs so that they would not overlap and could be more easily seen. (1/16/12 Minutes pp. 33, 36, C.R. at 61, 64.)

Borough Manager and Zoning Officer Barbara Krebs and Borough Code Enforcement Officer Richard Rorrer also testified at the ZHB hearings. Krebs testified that the Zoning Ordinance does not permit billboards in the zoning districts where Applicant sought to place his bill-

boards, and that the estimated 3,522 cars per day traffic in the Heavy Industry district, where billboards are a permitted use, amounts to over one-fifth the population of the Borough. (1/16/12 Minutes pp. 37–38, C.R. at 65–66.)

Rorrer testified that there are six existing billboards in the Borough, which are in the Manufacturing and Light Manufacturing districts and were likely non-conforming uses built before the adoption of the current Zoning Ordinance. (Minutes of February 20, 2012 Board Meeting (2/20/12 Minutes) pp. 5–6, 22, C.R. at 74–75, 91.) Rorrer described the stretch of Carlisle Street where the two billboards were proposed as very commercially oriented with a number of existing on-premises business signs. (2/20/12 Minutes pp. 6–10, C.R. at 75–79.)

At the conclusion of the second hearing, the Board voted two to zero to deny the applications. (2/20/12 Minutes p. 30, C.R. at 99.) The Board issued a written decision on March 19, 2012 outlining the reasons in support of the denial. (Board Decision, C.R. at 15–19.) Applicant appealed to the Trial Court on April 12, 2012, asserting that the Zoning Ordinance unconstitutionally restricted billboards, that the Board erred in finding that the billboards were not accessory uses, and that the Board's written decision violated the Sunshine Act.[1] (Notice of Appeal, C.R. at 22–26.)

The Trial Court issued an order on January 17, 2013 denying Applicant's appeal. The Trial Court held that Applicant did not sustain his burden of overcoming the presumption of constitutionality of the Zoning Ordinance's restriction of advertising signs to the Heavy Industry district because Applicant only submitted evidence regarding the particular type of billboards he proposed to erect and no evidence that the Zoning Ordinance restricts billboards generally. (Trial Court Op. at 5–11.) The Trial Court also found that Applicant had not met his burden of overcoming the presumption of constitutionality of the Zoning Ordinance's 25–foot height restriction because Applicant did not submit evidence why the height restriction was unreasonable or why 25–foot signs were impractical at the proposed location. (Trial Court Op. at 13–15.) Next, the Trial Court found that Applicant failed to present evidence regarding the current and proposed development of the Borough, and thus could not demonstrate a violation of the "fair share" principle based upon a partial exclusion of billboards within the Borough. (Trial Court Op. at 11–12.) Finally, the Trial Court held that the Board had not violated the Sunshine Act because the Board's written opinion did not conflict with the oral vote by the Board members at the hearing and there was no evidence of any improper executive session.[2] (Trial Court Op. at 17–18.)

## II. DISCUSSION

Applicant raises three issues on appeal to this Court. First, Applicant argues that the Zoning Ordinance created an unconstitutional *de facto* exclusion of billboards within the Borough. Next, Applicant contends that the Zoning Ordinance's exclusion of billboards violates the "fair share" principle. Finally, Applicant argues that the written decision by the Board justifying its denial of the billboard applications violated the Sunshine Act.

This Court's review in a zoning case where the Trial Court has not taken addi-

---

1. 65 Pa.C.S. §§ 701–716.

2. The Trial Court also found that the proposed billboards were not a permissible accessory use. (Trial Court Op. at 16–17.) Applicant did not raise this issue on appeal.

tional evidence is limited to determining whether the zoning board committed an error of law or an abuse of discretion. *City of Hope v. Sadsbury Township Zoning Hearing Board,* 890 A.2d 1137, 1144 (Pa.Cmwlth.2006). Where it is claimed that the zoning board committed an error of law, the applicable standard of review is *de novo* and the scope of review is plenary. *Pocono Manor Investors, LP v. Pennsylvania Gaming Control Board,* 592 Pa. 625, 637, 927 A.2d 209, 216 (2007). An abuse of discretion will be found only if the zoning board's findings are not supported by substantial evidence, that is, such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Interstate Outdoor Advertising, LP v. Zoning Hearing Board of Warrington Township,* 39 A.3d 1019, 1024 n. 5 (Pa. Cmwlth.2012).

## A. *De Facto Exclusion*

■ Applicant challenges three aspects of the Zoning Ordinance as unconstitutionally exclusionary of billboards: (i) the restriction of billboards to the Heavy Industry district, (ii) the maximum size of 300 square feet, and (iii) the maximum sign height of 25 feet. (Zoning Ordinance, Art. XXI § 140–114—140–116, C.R. at 318–21; Sign Ordinance §§ 102, 106, 107.3(A), C.R. at 334–36, 343–45.) Billboards are accepted as a legitimate business use in Pennsylvania and cannot be banned outright by local ordinance. *Township of Exeter v. Zoning Hearing Board of Exeter Township,* 599 Pa. 568, 581, 962 A.2d 653, 660 (2009). A municipality may, however, enact reasonable regulations concerning billboards, including limits on their dimensions, and a municipality may exclude billboards and other advertising signs from districts whose character is not consistent with their use. *Id.*

■ A constitutional challenge to a zoning ordinance may take the form that the ordinance constitutes either a *de jure* or a *de facto* exclusion of a use from the municipality. *Township of Exeter,* 599 Pa. at 579, 962 A.2d at 659. In a *de jure* case, the challenger contends that an ordinance bans a use on its face. *Id.* To establish a *de facto* exclusion, the challenger must show that an ordinance permits a use on its face but when applied acts to prohibit the use throughout the municipality. *Id.; Interstate Outdoor Advertising, LP v. Zoning Hearing Board of Warrington Township,* 39 A.3d 1019, 1025 (Pa.Cmwlth. 2012). Our Supreme Court has adopted a two-step analysis in *de facto* exclusion cases: First, a court must "consider whether the challenging party has overcome the presumed constitutionality of an ordinance by showing it excludes billboards as a use." *Township of Exeter,* 599 Pa. at 582, 962 A.2d at 661. If the challenger satisfies the first hurdle, the court "then consider[s] whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality or welfare." *Id.* For the reasons described below, we hold that Applicant has not met his burden of showing that any of the challenged aspects of the Zoning Ordinance excludes billboards from the Borough, and we do not reach the second step of the analysis.

### 1. *Restriction of Billboards to the Heavy Industry District*

■ Applicant argues that the Zoning Ordinance effectively prohibits billboards from the Borough because erecting and maintaining a billboard is economically impossible in the Heavy Industry district, the only district in the Borough where off-premises advertising signs are permitted. In making this argument, Applicant relies

on his expert's financial analysis submitted, which took the construction and maintenance costs of the proposed Carlisle Street billboards—with their digital LED illumination, 35-foot height and 242–square foot signage area—and compared it with the revenue that would be expected based on the estimated daily automobile traffic in the Heavy Industry district. (1/16/12 Minutes pp. 22–28 & Financial Projection Exhibit, C.R. at 50–56, 124.)

 "[I]f an ordinance, through its particular requirements, makes the development of a use permitted by the ordinance economically impossible, the ordinance is unconstitutional, because the municipality has essentially precluded a legitimate use by an indirect means." *Stahl v. Upper Southampton Township Zoning Hearing Board,* 146 Pa.Cmwlth. 659, 606 A.2d 960, 967 (1992). The economic *profitability* of a use, however, is irrelevant to our analysis of the constitutionality of an ordinance. *Id.* "[A]n ordinance is not to be declared invalid merely because it may deprive the owner of most lucrative and profitable uses; so long as the property in question may be reasonably used for the purposes permitted under the ordinance, the owner may not legally complain." *Kirk v. Zoning Hearing Board of Honey Brook Township,* 713 A.2d 1226, 1231 (Pa.Cmwlth. 1998); *see also Tidewater Oil Co. v. Poore,* 395 Pa. 89, 97, 149 A.2d 636, 640 (1959). The financial analysis by Applicant's expert supports only the conclusion that the proposed Carlisle Street billboards are not viable in the Heavy Industry district. The expert did not testify that the digital LED billboards would not earn any revenue in the Heavy Industry district, but rather only that the expected revenue was insufficient to cover the expenses of those billboards. Moreover, Applicant submitted no evidence that other types of conforming billboard uses in the Heavy Industry district, such as billboards with a static display on both sides that would presumably have lower construction and operational costs, would be economically impractical.

This Court addressed a similar economic impossibility argument in *Interstate Outdoor Advertising.* The applicant in that case sought to erect a 672–square foot billboard on a main road in the municipality, though the zoning ordinance only permitted a 25–foot high billboard with 50 square feet of advertising space in industrial zoning districts. *Interstate Outdoor Advertising,* 39 A.3d at 1021–22. The applicant introduced evidence at the zoning board hearings to show that a proposed non-conforming 672–square foot billboard was economically impossible in the zoning districts where billboards were permitted. *Id.* at 1027. Because the applicant failed to introduce evidence regarding the practicability of erecting a conforming 50–square foot billboard, this Court upheld the zoning board's determination that the applicant did not meet its burden in demonstrating a *de facto* unconstitutional exclusion of billboards for the reason of economic impossibility. *Id.* Like the Court in *Interstate Outdoor Advertising,* we cannot find the Zoning Ordinance unconstitutional without evidence that a less expensive billboard would be economically unsustainable to build and maintain in the Heavy Industry district. Accordingly, we find that Applicant has failed to meet his burden of showing a *de facto* unconstitutional exclusion of billboards from the Borough.

**2. *Maximum Sign Area***

 Applicant next argues that the Zoning Ordinance's maximum size limitation for advertising signs of 300 square feet amounts to a *de facto* exclusion of billboards from the Borough. In *Township of Exeter,* the Pennsylvania Supreme

Court upheld a zoning board determination that a 25–square foot limitation amounted to a *de facto* exclusion where the applicant had established that a sign of that size "cannot function effectively as a billboard because it is too small to contain and convey an advertising message to the motoring public." *Township of Exeter*, 599 Pa. at 583, 962 A.2d at 662. The Court in *Township of Exeter* found probative evidence that 300 square feet is an industry standard billboard size and that the applicant in that case had established before the zoning board that a 300–square foot sign was an adequate means of communicating an advertising message to passing drivers. *Township of Exeter*, 599 Pa. at 582–84, 962 A.2d at 661–62.

Here, Applicant did not present any evidence at the hearings to explain why the 300–square foot maximum sign area creates a *de facto* exclusion. Moreover, Applicant's argument regarding the maximum size area is undercut by his own proposal to build 242–square foot signs on Carlisle Street that conform to the size limit. In light of the holding of *Township of Exeter*, and without any evidence why a 300–square foot size limitation would effectively bar billboards from the Borough, we cannot conclude that Applicant has met his burden of overcoming the presumed constitutionality of the Zoning Ordinance's advertising sign size restriction.

### 3. *Maximum Sign Height*

■ Applicant's final claim of *de facto* exclusion of billboards concerns the Zoning Ordinance's 25–foot height limitation on all free-standing signs within the Borough. In support of this argument, Applicant relies on the testimony of Powell, the engineer who he called as an expert at the hearings, who stated that the 25–foot maximum height does not take into account the speed of traffic and the location and size of existing on-premises business signs within the Borough. (1/16/12 Minutes pp. 34–36,

C.R. at 62–64.) Powell further testified that a 35–foot maximum height in the Borough would be "fairly reasonable," and cited traffic safety studies from other areas that suggest that 35–foot billboards in the Borough would increase traffic safety because new 35–foot billboards would be less likely to distract drivers by overlapping in their fields of vision with existing, lower on-premises signs. (*Id.*)

■ While the evidence elicited by Applicant may demonstrate that a 35–foot maximum height would be a reasonable alternative to the Zoning Ordinance's maximum of 25 feet, it does nothing to show that the 25–foot height limit effectively bars all free-standing billboards from the Borough. Though Applicant offers a plausible alternative to the existing Zoning Ordinance, it is not the place of the courts to substitute their judgment for the reasonable determination of the zoning board responsible for passing the relevant regulation. *Fisher v. Viola*, 789 A.2d 782, 788 (Pa.Cmwlth.2001); *Kirk*, 713 A.2d at 1231. Accordingly, we cannot conclude that the height limit unconstitutionally excludes billboards from the Borough.

### B. *Fair Share Principle*

■ Applicant argues that, even if the Zoning Ordinance does not totally exclude the construction of new billboards within the Borough, the Zoning Ordinance does not allow the Borough to take on its "fair share" of billboards, thus violating the "fair share" requirement set forth in *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977). *Surrick* is one in a line of Pennsylvania Supreme Court cases dealing with the problems of exclusionary residential zoning provisions, in which the Court has taken the view that "[w]here a municipal subdivision is a logical place for development to occur, it must

assume its rightful part of the burdens associated with development, neither isolating itself nor ignoring the housing needs of the larger region." *BAC, Inc. v. Board of Supervisors of Millcreek Township*, 534 Pa. 381, 385, 633 A.2d 144, 146 (1993); *see also Surrick*, 476 Pa. at 189, 382 A.2d at 108. The "fair share" principle adopted by the Court requires municipalities to "plan for and provide land-use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." *Surrick*, 476 Pa. at 189, 382 A.2d at 108.

▆▆▆▆ Surrick sets forth a three-part analysis to determine whether a community violates the "fair share" principle: First, the court must determine whether the community is in the "path of growth" and in a logical place for growth and development. *Surrick*, 476 Pa. at 192, 382 A.2d at 110. Second, if the community is in the path of growth, the court must determine the present level of the development in the area. *Id.* Finally, if the municipality is in a logical place for growth and is not already highly developed, the court must determine whether the ordinance in question has an exclusionary impact. *Surrick*, 476 Pa. at 192–93, 382 A.2d at 110–11. The party challenging the ordinance bears the burden of showing that all three requirements of the three-part "fair share" analysis are satisfied. *BAC*, 534 Pa. at 386, 633 A.2d at 147 (1993); *Heritage Building Group, Inc. v. Plumstead Township Board of Supervisors*, 833 A.2d 1205, 1209 (Pa. Cmwlth.2003).

Here, the Board argues that the "fair share" principle is inapplicable because this case concerns billboards, not residential developments. Indeed, several decisions of this Court have called into question whether the Supreme Court intended the "fair share" analysis to apply outside the residential context. *See Hanson Aggregates Pennsylvania, Inc. v. College*

*Township Council*, 911 A.2d 592, 598 n. 6 (Pa.Cmwlth.2006); *LaRock v. Board of Supervisors of Sugarloaf Township*, 866 A.2d 1208, 1212 (Pa.Cmwlth.2005). The inapplicability of the "fair share" principle here is reinforced by the fact that *Surrick* arose out of a history of exclusionary zoning of lower income residential development by suburban municipalities and the factors set forth in the *Surrick* "fair share" analysis are specific to residential zoning. *See Surrick*, 476 Pa. at 188–93, 382 A.2d at 108–11. Some decisions of this Court, however, have applied the "fair share" principle to commercial uses. *E.g., Macioce v. Zoning Hearing Board of Borough of Baldwin*, 850 A.2d 882 (Pa.Cmwlth.2004) (cellular telephone tower); *Montgomery Crossing Associates v. Township of Lower Gwynedd*, 758 A.2d 285 (Pa.Cmwlth.2000) (shopping center); *Weiner v. Board of Supervisors of Lower Macungie Township*, 119 Pa.Cmwlth. 485, 547 A.2d 833 (1988) (office and retail development); *BP Oil, Inc. v. Zoning Hearing Board of the Borough of Brookhaven*, 37 Pa.Cmwlth. 258, 389 A.2d 1220 (1978) (gasoline station).

▆▆▆▆ In the decisions that do apply the "fair share" principle to commercial uses, this Court has followed the advice of *Sullivan v. Board of Supervisors of Lower Makefield Township*, 22 Pa.Cmwlth. 318, 348 A.2d 464 (1975), that "it is not sufficient, absent a showing of total prohibition, for a developer to merely point out that a relatively small area of the municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served." *Id.* at 467; *see also Macioce*, 850 A.2d at 889; *Montgomery Crossing*, 758 A.2d at 289; *BP Oil*, 389 A.2d at 1222. Here, the evidence Applicant relies on— the small size of the two Heavy Industry districts in the Borough and the testimony of his expert witness who described the

Heavy Industry districts as isolated, low-traffic areas—is exactly what *Sullivan* states is insufficient. Applicant did not submit any evidence that the residents of the Borough are underserved by the amount of existing advertising signs within the Borough; instead, the only evidence arguably relevant to the *Surrick* factors was the testimony by the Code Enforcement Officer that the Borough is built up with little open space and many existing signs (2/20/12 Minutes p. 6, C.R. at 75.), and that of Applicant that the area of Carlisle Street where he wishes to place his signs is very commercially oriented with numerous existing on-premises business signs. (1/16/12 Minutes pp. 14, 16, C.R. at 42, 44.)

Therefore, even if the "fair share" principle is applicable to the billboard use in this case, Applicant has not sustained his burden of demonstrating a violation of this principle.

### C. *Sunshine Act*

Finally, Applicant argues that the Board violated the Sunshine Act, 65 Pa.C.S. §§ 701–716, by allegedly holding an unannounced executive session after its vote to deny Applicant's applications at the conclusion of the second Board hearing on February 20, 2012 and by issuing a written decision explaining the denial that Applicant contends conflicted with the reasons at the public hearing.

The Sunshine Act requires that official action and deliberation by a quorum of members of an agency, such as a zoning board, take place at an open meeting. 65 Pa.C.S. §§ 702, 704. One exception to the general rule requiring open meetings permits an agency to have a closed executive session, but only for specified reasons and only where the reason for the meeting is announced at the public meeting directly before or after the session takes place. 65 Pa.C.S. §§ 707(a), 708. Section 713 of the Sunshine Act provides citizens with a private right of action to challenge any open or closed meeting that violates the terms of the Sunshine Act and to request the court void the business transacted during any unauthorized meeting. 65 Pa.C.S. § 713.

■ Here, the record shows that at the conclusion of the second hearing on February 20, 2012, Board Member Vance Stabley stated that the Zoning Ordinance prohibited the proposed billboards in the Shopping Center and Local Business districts and that he believed the Zoning Ordinance was "correct as written." (2/20/12 Minutes p. 30, C.R. at 99.) Board Member John Hollinger made a motion that the proposed billboards were not permitted by zoning and that the applications be denied; the motion passed unanimously by a voice vote of two to zero. (*Id.*) Then on March 19, 2012, the Board rendered a written decision in which it made findings of fact and two conclusions of law that Applicant had failed to prove a *de facto* exclusion of billboards and that the proposed billboards were not a permissible accessory use. (Board Decision, C.R. at 15–20.) There was no mention of an executive session in either the minutes of the February 20, 2012 Board hearing or in the March 19, 2012 written decision, and the Board denies that an executive session took place. With only Applicant's bare assertion, and without any evidence in the record, there is no basis to hold that the Board conducted an illegal executive session in contravention of the Sunshine Act.

■ Applicant also argues that the Board violated the Sunshine Act by issuing a written decision that differed from the public statements of the Board members when they voted to deny Applicant's billboard applications at the conclusion of the February 20, 2012 hearing. Contrary to Applicant's contention, the Sunshine Act

only governs the formal actions taken at public meetings and not the writing issued afterwards to explain the actions. *See* 65 Pa.C.S. § 704; *Piecknick v. South Strabane Township Zoning Hearing Board,* 147 Pa.Cmwlth. 308, 607 A.2d 829, 834 (1992) ("The fact that the *written* decision was not voted on and approved at a public meeting is of no import because the formal action required to be taken at a public meeting by the Sunshine Act is the actual vote on the decision.") (emphasis in original). Instead, it is the Municipalities Planning Code which requires zoning boards issue a written decision on applications within 45 days of the decision. Act of July 31, 1968, P.L. 805, No. 247, Art. IX, § 908(9), *as amended* 53 P.S. § 10908(9). In cases where the written decision follows a denial of an application, the decision must include "findings of fact and conclusions based thereon together with the reasons therefor." *Id.*

 In asserting that the written decision violated the Sunshine Act, Applicant appears to be arguing that a written decision must not go beyond the scope of what was stated at the public hearing where the decision was taken. In support of his argument, Applicant cites only one decision of the Erie County Court of Common Pleas. *See Washington Township v. Gillette,* No. 8200–1993, 1994 WL 902058 (Pa. Com.Pl. July 22, 1994). In that case, however, the court determined that the written decisions of the board were void because the decisions themselves were different from those made orally at the hearings. *Id.*

Here, there was no contradiction between the oral decision taken by the Board

and its subsequent written decision. The March 19, 2012 written decision includes findings of fact, a legal and factual analysis and two conclusions of law in which the Board addressed the legal arguments Applicant put forth in his December 20, 2011 letter appealing the denial of the billboard applications. (C.R. at 7–8, 15–20.) While the written decision certainly expanded upon the Board's oral reasons for denial and addressed legal arguments that were not discussed at the hearings, the Board did not take a different course in the written decision that calls into question or undermines the oral vote to deny the applications at the hearing.

 The purpose of the requirement in the Municipalities Planning Code that a zoning board issue a written decision is so that reviewing courts, and applicants, benefit from understanding the reasons for the decision. *In re Arnold,* 984 A.2d 1, 7 (Pa.Cmwlth.2009); *Bruno v. Zoning Board of Adjustment,* 664 A.2d 1077, 1079 (Pa.Cmwlth.1995). The Municipalities Planning Code does not require, and Applicant cites no authority to support his argument, that the written decision only recite the reasons given for a decision at the hearing and go no further.[3]

Accordingly, we conclude that the Board's March 19, 2012 written decision did not violate the Sunshine Act or the Municipalities Planning Code. For the foregoing reasons, we affirm the order of the trial court.

### ORDER

AND NOW, this 16th day of October, 2013, the order of the York County Court

---

3. Indeed, such a requirement would have the potential to make zoning hearings overly long and cumbersome as board members would feel compelled to recite each of the reasons given for their decisions for fear of defaulting on any reason not discussed at the hearing. Similarly, a requirement could hinder meaningful appellate review as the board would not be able to flesh out their stated decisions at a hearing with a fulsome written discussion on studied reflection after the conclusion of the meeting.

of Common Pleas in the above-captioned matter is hereby AFFIRMED.