Daniel K. Cook,                                    :
                                                   :
                   Appellant                       :
                                                   :
          v.                                       : No. 322 C.D. 2015
                                                   : Argued:  December 7, 2015
Riegelsville Borough Council and                   :
The Borough of Riegelsville                        :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED:  May 6, 2016**


          This matter is an appeal by Daniel K. Cook from an order of the Court of Common Pleas of Bucks County (Trial Court) affirming the Final Decision by the Council of the Borough of Riegelsville (Council) that denied a Petition for Curative Amendment filed by Cook.  In the Petition, Cook sought to change the zoning district for four adjoining parcels he owns (Property) within the Borough of Riegelsville (Borough) that were partly R-1 Residential and Commercial to entirely Commercial, asserting that the Borough's Zoning Ordinance (Ordinance) unlawfully excludes commercial uses and that the Borough fails to provide for its "fair share" of commercial uses.  For the reasons that follow, we affirm the Trial Court's order.

The Borough is situated in Bucks County along the Delaware River and the Delaware Canal with a total land area of 650 acres (.99 square miles). (Final Decision, Finding of Fact (F.F.) ¶8.) The Commercial (or "C") District consists of one contiguous area of 12.13 acres of which 8.21 acres is currently residential use while 3.92 acres is currently commercial and other non-residential land uses. (*Id*., F.F. ¶10.) While some nearby municipalities have grown in recent decades, the Borough's population declined from 912 in 1990 to 863 in 2000 with an expectation of an increase in population in 2010 to 881, which is still below the 1990 level. (*Id*., F.F. ¶9; Cook Ex. A-22: Riegelsville Borough Population Projections, Reproduced Record (R.R.) at 384a.)

The Property consists of four undeveloped parcels of land within the Borough with Tax Map Parcel Numbers 38-006-077-1 (Lot 77-1), 38-006-077 (Lot 77), 38-006-076 (Lot 76), and 38-002-061-1 (Lot 61-1). (Final Decision, F.F. ¶3.) Lot 77-1 falls entirely within the Commercial District, Lot 77 is partly within the Commercial District and partly in the R-1 Residential District, and Lots 76 and 61-1 fall entirely within the R-1 District. (*Id*., F.F. ¶4.) The Property is 12 acres in total with 1.5 acres within the Commercial District and 10.5 acres in the R-1 District. (*Id*.) Lots 77, 76 and 61-1 front onto State Route 611 with the rear of the properties facing the Delaware Canal; Lot 77-1, the only one of the lots entirely in the Commercial District, does not front onto Route 611 or any of the other principal roads in the Borough. (Cook Ex. A-2: Zoning Overlay on Tax Map; Cook Ex. A-3: Zoning Overlay on Aerial Image.)

Cook filed the Petition for Curative Amendment on August 16, 2007. (Petition, R.R. at 8a-14a.) Attached as an exhibit to the Petition was the proposed curative amendment to Section 106 of the Ordinance which amends the Borough's

2

official zoning map to change the zoning classification of the Property to be entirely within the Commercial District. (*Id.*, Exs. A, C, R.R. at 9a-10a, 13a-14a.) Cook also attached to the Petition a narrative impact statement pursuant to Section 609.1(c) of the Municipalities Planning Code (MPC),[1] which addresses the impact of the proposal on the infrastructure, natural resources, natural features and other land uses of the Borough. (*Id.*, Ex. B, R.R. at 11a-12a.)

Hearings were held before the Council on March 12, April 2, May 7 and June 11, 2009. Cook presented the testimony of Mark Bahnick, a partner in a civil engineering, surveying and land planning consulting firm, who prepared a "Curative Amendment Plan," which showed the intended commercial development of the Property of two 25,000 square foot retail buildings fronting onto Route 611. (Cook Ex. A-1.) According to the plan, the proposed retail buildings would be separated by a drive aisle leading to a large parking area in the rear towards the Delaware Canal; also in the rear would be an area for septic facilities on the Lot 77-1 portion of the Property. (*Id.*)

Bahnick testified that there are several "ancillary regulations" of the Ordinance, including minimum lot area (15,000 square feet), minimum lot width (100 feet) and minimum setbacks (40 feet in the front, 30 feet in the rear and 15 feet on the sides), that severely hinder new commercial developments on the 52 parcels in the Commercial District. (Mar. 12, 2009 Hearing Transcript (3/12/09 H.T.) at 38-50, R.R. at 79a-91a; Ordinance §§ 702, 901, 903-904.) Bahnick testified that there are 27 commercial uses and 3 office uses set forth in the Ordinance and 15 of these uses can only be built in the Commercial District;

---

[1] Act of July 31, 1968, P.L. 805, added by Act of June 1, 1972, P.L. 333, *as amended*, 53 P.S. § 10609.1(c).

3

Bahnick stated that, of these 30 commercial and office uses, only 13 can be built on 3 parcels in the Commercial District. (Apr. 2, 2009 Hearing Transcript (4/2/09 H.T.) at 15-16, 21, 29, R.R. at 147a-148a, 153a, 161a; Cook Ex. A-16: Table of Summary of Allowable Uses, R.R. at 364a-365a; Ordinance §§ 303(D)-(E), 305, 701.) Bahnick further stated that 3 of the commercial and office uses (Day Care Center, Drive-ins or Other Eating Establishments, Lawn Mower Repair Service) can only be built on 1 lot in the Commercial District; Cook also owns this lot, but it serves as his primary residence, and he has not included it in his proposed commercial development. (4/2/09 H.T. at 21, 29-30, R.R. at 153a, 161a-162a; Cook Ex. A-16: Table of Summary of Allowable Uses, R.R. at 364a-365a.) Bahnick testified that there is 1 additional commercial use, Guest House, Bed and Breakfast, that cannot be built on any lot in the Commercial District because there is a minimum lot requirement of 2 acres for this use.[2] (4/2/09 H.T. at 20-21, R.R. at 152a-153a; Cook Ex. A-16: Table of Summary of Allowable Uses, R.R. at 365a; Ordinance § 303(E)(18)(a).) Bahnick's analysis showed that Lot 77-1, the portion of the Property that is entirely in the Commercial District, would permit all but 4 of the 30 commercial and office uses; however, Bahnick testified that Lot 77-1 does not face an "active" street and is not easily accessible from the Borough's main streets. (3/12/09 H.T. at 48, 51, R.R. at 89a, 92a; Cook Ex. A-16: Table of Summary of Allowable Uses, R.R. at 364a-365a.)

Bahnick described additional restrictions in the Ordinance that could substantially limit many new, by-right commercial uses, including buffer zones (which, for example, would require a 25 foot buffer in cases of new commercial

---

[2] The Guest House, Bed and Breakfast use is also permitted by special exception in the Resource Protection District and R-1 Residential District. (Ordinance §§ 303(E), 401(c), 501(c).)

4

uses next to existing residential buildings) and parking requirements (such as a requirement of one parking spot for every 200 square feet of space in retail stores). (3/12/09 H.T. at 53-57, R.R. at 94a-98a; 4/2/09 H.T. at 12, R.R. at 144a; Ordinance §§ 303(E), 1106.) Finally, Bahnick testified that any new commercial use in the Borough would require approval from the Bucks County Department of Health for its waste disposal system, which Bahnick opined would be cost prohibitive, and that 43 of the 52 lots in the Commercial District fall within the 100-year floodplain and thus any new finished floor in a new building on these lots would have to be built 1.5 feet above the elevation of the 100-year flood. (3/12/09 H.T. at 57-67, R.R. at 98a-108a; Cook Ex. A-8: Zoning and Floodplain Overlay on Tax Map; Ordinance §§ 1100-1101, 1103, 1503(a)(8).)

Cook also offered the testimony of Carter van Dyke, a landscape architect and planner, who testified that the proposed reclassification of the Property is consistent with the growth management and redevelopment goals of the Bucks County Comprehensive Plan, the Commercial District Plan for the Borough prepared by the Bucks County Planning Commission, and the Statement of Community Objectives and Goals in the Ordinance. (May 7, 2009 Hearing Transcript (5/7/09 H.T.) at 13-45, R.R. at 210a-242a; Cook Ex. A-20: Bucks County Comprehensive Plan, R.R. at 374a-379a; Cook Ex. A-23: Riegelsville Borough Commercial District Plan, R.R. at 386a-400a; Ordinance: Statement of Community Goals and Objectives.) Van Dyke presented an analysis of the market demand for new retail establishments in the Borough and surrounding area, concluding that the Borough supplied a low percentage of retail establishments relative to the overall market and that between 65,000 and 81,000 square feet of retail space was required in the area to satisfy demand. (5/7/09 H.T. at 45-77, R.R.

at 242a-274a; Cook Ex. A-33: Table of Reasonable New Store Space, R.R. at 423a-424a; Cook Ex. A-34: Retail Development Opportunities and Land Requirements for Needed Retail, R.R. at 426a.) Van Dyke also analyzed the commercial viability of the lots within the Borough's Commercial District, taking into account traffic counts, visibility, road access and lot size, and concluded that the Property would be among the most viable for commercial uses. (5/7/09 H.T. at 77-97, R.R. at 274a-294a; Cook Ex. A-37: Table of Riegelsville Commercial District Marketability Assessment, R.R. at 433a-434a.)

The Borough did not present any witnesses in response to the Petition, but did admit into evidence a review letter from the Bucks County Planning Commission in accordance with Section 609.1(a) of the MPC. (5/7/09 H.T. at 104, R.R. at 301a; Borough Ex. 4: Oct. 3, 2007 Letter of Bucks County Planning Commission, R.R. at 332a-336a.) The Planning Commission provided the following comments; (i) Cook's proposal may lead to development not compatible with the Borough's goal of maintaining its "small-town character and sense of place"; (ii) the proposal was generally compatible with surrounding uses so long as adequate buffers are in place: (iii) the proposal would double the amount of commercially zoned land in the Borough and could inhibit the revitalization of the existing commercial district; (iv) if the exclusionary arguments are found to have merit, the Borough should impose additional zoning regulations to ensure the establishment of a "village type of commercial district"; (v) Cook's narrative impact statement was insufficiently detailed; (vi) any new buildings in the floodplain should be discouraged[3]; and (vii) a fair share analysis is inappropriate

---

[3] Cook's proposed buildings would be built at least partly within the 100-year floodplain. (Cook Ex. A-8: Zoning and Floodplain Overlay on Tax Map.)

6

when there already is an existing commercial district. (Borough Ex. 4: Oct. 3, 2007 Letter of Bucks County Planning Commission at 3-5, R.R. at 334a-336a.)

On June 19, 2009, the Council issued the Final Decision denying the Petition. In the Final Decision, the Council accepted Cook's assertion that the ancillary regulations of the Ordinance made it impossible to build new, by-right commercial uses on nearly all of the lots that fell within the Commercial District. (Final Decision, F.F. ¶12, C.L. ¶11.) The Council concluded, however, that there was no *de facto* exclusion of commercial uses in the Borough because Cook had not shown that properties presently zoned commercial are not being used for commercial uses because of the ancillary regulations in the Ordinance or that a determined developer would be unable to develop a commercial property in the Commercial District. (*Id*., C.L. ¶¶12, 14.) The Council noted that Cook's argument was premised almost entirely on the difficulty of building new commercial buildings on existing lots when case law holds that site suitability is not a relevant consideration in determining the validity of a zoning ordinance. (*Id*., C.L. ¶15.) The Council also rejected Cook's fair share argument, finding van Dyke's testimony regarding the present commercial conditions in the Borough and the expected demand for commercial development in the future as not credible and concluding that Claimant had not shown that the Borough was a logical area for growth or that the existing commercial area was insufficient to satisfy the projected demand.[4] (*Id*., F.F. ¶16, C.L. ¶13.)

Cook appealed, and the Trial Court affirmed the Final Decision without taking additional evidence. The Trial Court concluded that the Council did

---

[4] The Council also concluded that Cook lacked standing to bring his curative amendment challenge to the Ordinance because he had not introduced any evidence that any of the ancillary regulations specifically affected the Property. (Final Decision, C.L. ¶16.)

7

not commit an abuse of discretion because its findings of fact were amply supported by evidence of record. (Jan. 13, 2015 Memorandum Opinion at 3-5; Apr. 27, 2015 Rule 1925 Opinion at 9-11.) The Trial Court determined that the Council did not err when it concluded that Cook had not proven a *de facto* exclusion or a violation of the fair share principle because Cook had not shown that the Borough was a logical area for population growth and that the percentage of land in the Borough zoned commercial could not accommodate expected demand.[5] (Memorandum Opinion at 5-7; Rule 1925 Opinion at 5-7.) Cook thereafter filed a timely notice of appeal from the Trial Court's decision.[6]

The procedure for a curative amendment petition is set forth in Sections 609.1 and 916.1 of the MPC.[7] Pursuant to Section 609.1(a), "[a] landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided as provided in" Section 916.1. 53 P.S. § 10609.1(a). The landowner must include site-specific plans with the curative amendment petition. Section 916.1(c)(2) of the MPC, 53 P.S. § 10916.1(c)(2);

---

[5] The Trial Court also took judicial notice of a March 9, 2012 amendment to the Ordinance that addressed many of the issues raised by Cook in the Petition. (Memorandum Opinion at 7.) Because the amendment to the Ordinance postdated the Final Decision and has not been made a part of the record in this case, we do not address this amendment in this opinion.

[6] Where, as here, the trial court has not taken additional evidence, our review of an appeal of a denial of a curative amendment petition is limited to determining whether the governing body of the municipality abused its discretion or committed an error of law. *LaRock v. Board of Supervisors of Sugarloaf Township*, 866 A.2d 1208, 1211 n.7 (Pa. Cmwlth. 2005).

[7] Added by the Act of June 1, 1972, P.L. 333, 53 P.S. § 10609.1; added by the Act of Dec. 21, 1988, P.L. 1329, 53 P.S. § 10916.1.

*Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 30 A.3d 1083, 1097 (Pa. 2011). The governing body of the municipality has exclusive jurisdiction to hear curative amendment petitions. Section 909.1(b)(4) of the MPC, added by the Act of Dec. 21, 1988, P.L. 1329, 53 P.S. § 10909.1(b)(4).

Following public notice, the governing body shall hold hearings on the curative amendment petition and provide notice to the planning agency of the municipality to submit its recommendations. Section 609(c) of the MPC, 53 P.S. § 10609(c); 53 P.S. § 10609.1(a), (b). If the governing body determines that the curative amendment petition has merit, the governing body shall then consider the site-specific plans submitted by the landowner and shall also consider the impact of the proposed amendment on the natural resources and natural features of the municipality, other land uses within the municipality and the public resources of the municipality, including roads and sewer facilities. 53 P.S. §§ 10609.1(c), 10916.1(c)(5); *Piper Group*, 30 A.3d at 1097. The governing body "may accept a landowner's curative amendment, with or without revision, or may adopt an alternative amendment which will cure the challenged defects." 53 P.S. § 10609.1(c); *see also Piper Group*, 30 A.3d at 1097 ("[W]hile the governing body must cure the defect, it need not provide *carte blanche* development rights."). If a court overturns a municipality's decision denying a curative amendment, the court's decision does not invalidate the entire zoning ordinance or map, but only the portion that specifically relates to the petition. 53 P.S. § 10609.1(b).

Cook raises two interrelated arguments that the Ordinance is exclusionary and that his Petition should be granted. First, Cook contends that, while the Ordinance sets forth various permitted commercial uses, the ancillary regulations in the Ordinance related to lot area, lot width, setbacks, buffers,

9

parking and septic systems have created a *de facto* exclusion of commercial uses within the Borough. Second, Cook argues that the Borough is in a growth area without sufficient existing commercial properties and that the Ordinance does not allow the Borough to accept its fair share of commercial use development in the future. Upon review, we agree with the Trial Court that Council did not abuse its discretion or commit an error of law when it denied the Petition.

A party that challenges a zoning ordinance on the basis that it unconstitutionally excludes a certain use may argue either a *de jure* exclusion on the basis that the ordinance totally excludes the use on its face or a *de facto* exclusion wherein "the challenger alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished." *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009). In a *de facto* challenge case, the party challenging the ordinance has the burden of proof to overcome the presumption of validity that attaches to zoning ordinances. *Id.* at 661; *Smith v. Hanover Zoning Hearing Board*, 78 A.3d 1212, 1218 (Pa. Cmwlth. 2013). If the challenger has shown that the ordinance is in fact exclusionary, the court must "then consider whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare." *Township of Exeter*, 962 A.2d at 661; *Smith*, 78 A.3d at 1218.

Here, it is undisputed that the evidence presented by Cook showed that the ancillary regulations of the Ordinance, including minimum lot area, lot width, setbacks and buffer requirements, preclude new commercial uses from being built on a large majority of the parcels in the Borough's Commercial District. However, Cook did not show that all commercial uses are effectively

10

barred from all sites within the Commercial District. Indeed, Lot-77-1, which is the only one of the parcels in the Property that is located entirely in the Commercial District, would permit the Retail Store use that Cook proposes, but Cook does not seek to place either of his proposed commercial buildings on Lot 77-1 and instead only seeks to use this lot to house the septic facility for his larger 50,000 square foot commercial development. (Ordinance § 303(E)(3); Cook Ex. A-1: Curative Amendment Plan.) The fact that Cook could not place his desired retail development on Lot 77-1 because it does not face an active street does not make the Ordinance exclusionary.

Furthermore, the Petition is not seeking the rescission of any of the ancillary regulations in the Ordinance but rather only to expand the Commercial District to include other parcels of land owned by Cook that are currently in the R-1 Residential District. At its core then, Cook is not objecting to the exclusionary nature of the Ordinance but instead to the boundaries of the Commercial District so that he can combine parcels to build a bigger commercial development on a more well-traveled street. As this Court has explained, "[g]enerally, courts will not sustain challenges brought to the location of zoning boundaries since the location of such boundaries is largely a matter within the legislative discretion of the municipalities." *Appeal of Izes*, 462 A.2d 920, 922 (Pa. Cmwlth. 1983); *see also Namcorp, Inc. v. Zoning Hearing Board of Horsham Township*, 558 A.2d 898, 902 (Pa. Cmwlth. 1989). Moreover, this Court has held that the fact that a municipality's zoning will not allow for a retail property in the dimensions that the petitioner has proposed does not suffice to show that the zoning ordinance is exclusionary. *See Montgomery Crossing Associates v. Township of Lower Gwynedd,* 758 A.2d 285, 289 (Pa. Cmwlth. 2000) (holding that an ordinance that

11

limited retail stores to 6,500 square feet within the township's business district did not render it exclusionary); *see also Cambridge Land Co. v. Township of Marshall*, 560 A.2d 253, 260 (Pa. Cmwlth. 1989) (*en banc*) ("[W]e have found no authority for requiring that every municipality's zoning ordinance must make provision for every planning variation or combination which has been conceived, nor have the landowners cited any such authority."). Accordingly, we conclude that Cook did not show that the Ordinance created a *de facto* exclusion of commercial properties in the Borough.

Cook also failed to show that the Borough did not account for its fair share of commercial uses. The "fair share" principle was adopted by the Pennsylvania Supreme Court to ensure that "[w]here a municipal subdivision is a logical place for development to occur, it must assume its rightful part of the burdens associated with development, neither isolating itself nor ignoring the housing needs of the larger region." *BAC, Inc. v. Board of Supervisors of Millcreek Township,* 633 A.2d 144, 146 (Pa. 1993); *see also Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 382 A.2d 105, 108 (Pa. 1977). This principle requires that municipalities "plan for and provide land-use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." *Surrick*, 382 A.2d at 108.

In *Surrick*, the Supreme Court set forth a three-part test to determine whether a municipality is accepting its fair share of a particular use: first, the court must determine whether the community is in a logical area for population growth and development. *Id.* at 110. If the community is determined to be in an area of growth, the court must then review the present level of development. *Id.* Finally, if the court determines that the community is in an area of growth and is not highly

12

developed, the court must determine whether the ordinance has an exclusionary impact. *Id*. at 110-11. In cases where the fair share principle has been applied to commercial uses, this Court has also observed that "it is not sufficient, absent a showing of total prohibition, for a developer to merely point out that a relatively small area of the municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served." *Smith*, 78 A.3d at 1221 (quoting *Sullivan v. Board of Supervisors of Lower Makefield Township,* 348 A.2d 464, 467 (Pa. Cmwlth. 1975) (*en banc*)); *see also Macioce v. Zoning Hearing Board of the Borough of Baldwin*, 850 A.2d 882, 889 (Pa. Cmwlth. 2004); *Montgomery Crossing,* 758 A.2d at 289.

Cook argues on appeal that the evidence of record would support the conclusion that the Borough was not accepting its fair share of commercial uses for its surrounding area was. However, Cook's argument was premised on the testimony of his expert, van Dyke, and Council rejected his testimony as not credible. As the governing body responsible for making a determination on the Petition, Council had authority to reject even uncontradicted testimony that it finds to be not credible, and this Court is bound by those credibility determinations. *Nettleton v. Zoning Board of Adjustment of City of Pittsburgh*, 828 A.2d 1033, 1041 n.10 (Pa. 2003); *Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 992 A.2d 224, 240 (Pa. Cmwlth. 2010) *aff'd,* 30 A.3d 1083 (Pa. 2011). Accordingly, we cannot say that Council's determination that Cook presented no evidence that the Borough was in a logical area for growth or that the area in the Borough available for commercial use cannot accommodate its economic burden was in error. Furthermore, even if we were to consider the evidence presented by van Dyke, we would agree with Council's conclusion that

there was no showing of a fair share violation. While the population estimates provided by van Dyke showed population growth in neighboring communities in Northampton County and across the Delaware River in New Jersey, these estimates showed only modest anticipated population gains from 2000 to 2010 in the Borough and neighboring Durham Township and a small absolute population in this corner of Bucks County.[8] (Cook Ex. A-22: Riegelsville Borough Population Projections, R.R. at 384a; Cook Ex. A-28: Table of Riegelsville Area Trade Area Population Projections, R.R. at 412a.) Thus, rather than showing that the Borough was a logical area for population growth, Cook demonstrated only that a small area of population was zoned for commercial growth. Such a showing is insufficient to invalidate an ordinance under our fair share precedent. *Cf. Smith*, 78 A.3d at 1221; *Macioce*, 850 A.2d at 889.

Accordingly, we affirm the order of the Trial Court.

_____
JAMES GARDNER COLINS, Senior Judge

---

[8] The population estimates presented by van Dyke showed that the estimated population of the Borough and Durham Township in 2010 was 2,227, an increase of only 106 people from 1990 and 51 people from 2000. (Cook Ex. A-22: Riegelsville Borough Population Projections, R.R. at 384a; Cook Ex. A-28: Table of Riegelsville Area Trade Area Population Projections, R.R. at 412a.)

14

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Daniel K. Cook,                                    :
                                                   :
                    Appellant                      :
                                                   :
            v.                                     : No. 322 C.D. 2015
                                                   :
Riegelsville Borough Council and                   :
The Borough of Riegelsville                        :

# O R D E R

AND NOW, this 6th day of May, 2016, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge